GEORGE J. RAYMOND *vs.* CITY OF WORCESTER.

Middlesex.    October 5, 1898. — November 23, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Tax — Evidence of Ownership of Property — Action — Finding.*

Upon the facts of this case, which was an action to recover the amount of a tax assessed to a firm upon a stock of goods, and demanded of and paid by the plaintiff under protest, the judge, sitting without a jury, was warranted in finding that the plaintiff was the owner of the goods assessed, or had such an interest in them as to be liable for the tax.

CONTRACT, to recover the amount of a tax assessed upon a stock of goods in the defendant city, and demanded of and paid by the plaintiff under protest.    Trial in the Superior Court, without a jury, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

The tax was on personal property, and was assessed as of May 1, 1891, against George J. Raymond and Company.

The plaintiff testified that he resided in Cambridge in May and June, 1896 ; that in May, 1891, he resided in the same place, and was not the owner of any stock in trade in the defendant city in 1891 ; that he was the manager of the firm doing business as George J. Raymond and Company ; that Hattie D. Raymond composed that firm ; that prior to May 1, 1891, she had been doing business under that name in the defendant city, possibly for six months or a year ; that she had been doing business under that name in other places, and was so doing at that time ; that as manager of the firm of George J. Raymond and Company the plaintiff was supposed to draw two thousand dollars a year ; that he drew money from the business as he needed it to live on ; that at no time did he have any property in the defendant city ; that Hattie D. Raymond had purchased the property in that city six months to a year before the levying of the tax ; that up to the time of the levy she had made only one purchase, and that consisted of the stock of Whidden, Burdett, and Young, which was bought of Horace Partridge and Company ; that the property in the store in the defendant city upon which the tax

was levied consisted of what there was left of the stock bought of Horace Partridge and Company, and also other property that had been bought by Hattie D. Raymond and put into the store; that he did not pay any money that went for the purchase of any of the goods in the store; that he never heard of the tax, and no tax bill ever came to him until it was presented to him by a constable in Boston in 1896; that he had never heard of any demand for taxes on the property at all; that the date of the payment of the tax was May 21, 1896, and the payment of it was made to a constable of Boston; that just prior to the time there was a protest in writing made; and that he took a receipt for the money.

Upon cross-examination, the plaintiff testified that he is now the manager of the Raymond Syndicate, a corporation organized under the laws of Maine in 1893; that business had been carried on under the name of George J. Raymond and Company for about ten years prior to 1882; that Hattie D. Raymond, he thought, knew it all the time; that before 1882 he was in the same business, carrying it on in his own name; that he would not say that a sign did not read George J. Raymond and Company; that the bill heads and all letter heads and the checks were in the name of George J. Raymond; that he was carrying on business in Tremont Row, Boston, and had been about nine years prior to 1882, when he went into insolvency; that his business was closed out, and on that account the business was conducted in his wife's name; that he thought that they first began to have stores outside of Boston three or four years before they went to Worcester; that he had never been in business in Worcester before this time in 1891; that they bought out Whidden, Burdett, and Young, who were doing business as the Bay State Clothing Company; that he could not state the exact time when this stock was purchased; that the store had been run as a retail clothing store when he bought it out; that he continued to do business at the same store; that he thought he made an arrangement about hiring the store, and saw one Taylor about it, who might have been the landlord; that one Dalrymple was manager of the store when he bought it, and he continued as the manager after the purchase; that he was not sure whether it was a year or a year and a half before the tax was assessed; that he

never paid any taxes in Worcester; that he did not know of any taxes being paid on that stock; that he helped to sell the business out to some one else; that other people had something to do with it besides himself; that he represented the owner largely in the sale, possibly fully; that he was not quite sure whether there was a bank account kept for the store in Worcester; that Dalrymple deposited money there, if they had a bank account; that after that stock was purchased he ran it as a retail clothing and gentlemen's furnishing house; that during the time that he managed the business there the stock was replenished from time to time by consignments to the store; that he had met Dalrymple, he thought, once or twice before the purchase; that he did not think that he said anything to Taylor or to Dalrymple about Hattie D. Raymond; that he did not remember whether or not he used the first person when he made arrangements in regard to purchasing the store, but that he did not think that he mentioned her name; that it would not be natural where it was not necessary; that upon one of the various trips to Worcester he engaged Dalrymple to be the local manager there; that the latter was to have charge largely of the business; that he thought he sometimes went there as often as once a week, and possibly sometimes only once in two weeks or a month; that Dalrymple did not have the management of the store; that the store was managed from Boston; that the plaintiff usually attended to the advertising; that he wrote the advertisements usually in Worcester, and had them printed there; that he would not say that, during his management of the store, he told Dalrymple that his wife had the management of the business, but Dalrymple knew it very well; that he did not recollect whether there was a married woman's certificate for Hattie D. Raymond filed in Worcester; that he knew that she filed one in Boston; that he did not think that he ever saw one of the assessors of Worcester about the assessment of that store; that he never received the tax bill sent out in 1891; that he could not say that he ever told anybody in Worcester, or representing Worcester, that his wife owned the store; and that he knew that Dalrymple knew it, and it seemed to him that he had told him.

On redirect examination, the plaintiff testified that he did not remember that any question was asked as to who did own

the store; that Dalrymple's duties at the store were to look out for the general interests of the thing; that Hattie D. Raymond was his wife, and that he then lived with her in Cambridge, and had for a number of years.

Hiram G. Otis, called as a witness for the defendant, testified that he was chairman of the board of assessors of the defendant city, and had been for eleven years; that he was familiar in 1891 with the store in question; that his attention was first called to the store for the purpose of taxation some time in the month of May or June, 1891; that he was looking over the record of the assistant assessor, and found that this store "brought in a new name," different from the one he had a year before; that it was always his custom to go to those places where there was a new tenant, and find out about it; that he went to this store, and inquired about it; that he saw a man in the store, and asked for the manager; and that he finally saw Dalrymple.

Upon cross-examination, the witness testified that the assessment was made as of May 1, 1891.

Ransom C. Taylor, called as a witness for the defendant, testified that he owned the building in which this store was kept; that some time in 1891 he had some dealing with the plaintiff in regard to hiring the store; that the plaintiff came before the stock was purchased; and that he said nothing about anybody being interested in the transaction except himself.

Edgar A. Dalrymple, called as a witness for the defendant, testified that in 1891 he was in the clothing business in the store known as "the Bay State," in the defendant city; that before 1891 he had been there for five years, the latter part of which time he was manager under Whidden, Burdett, and Young; that he first saw the plaintiff in connection with that store in February, 1891, at the store; that he had never seen him before; that he came with a letter of introduction from the firm of Whidden, Burdett, and Young; that the witness showed him the store and the stock of goods; that the plaintiff said he came to look over the stock of goods with the intention of buying them; that he said he was pleased with it, and wanted to know who the landlord was; that the witness next saw him several days later, when he came in and said that he had bought the stock, and asked if the witness would remain there; that the

witness remained, and got ready for a reopening of the store; that some other stock came to the store, directed to George J. Raymond and Company; that sometimes the plaintiff came to the store twice or three times a week, and then again the witness would not see him for two or three weeks; that the witness was hired to look after the store and take charge of it; that that was all that was said at the time when he was hired; that the witness hired the employees, and looked after them in general, from February 1 to October 1, 1891; that he paid local bills that were contracted at the store; that the money left after paying the employees and the local bills was taken to Boston; that there was no bank account kept in Worcester; that the money was taken to Boston, sometimes by himself, sometimes by the plaintiff, or whomever he might send there after it; that the witness remembered the occasion when Otis came into the store; that it was some time in May or June, 1891; and that he took his directions in the management of the store from the plaintiff.

There was evidence tending to show that due notice and demand were made for the payment of the tax in question, which evidence was contradictory.

Enoch H. Town, called as a witness for the defendant, testified that he was the city clerk of Worcester, and had with him the records of his office as to married women's certificates; and that he had no record in 1891 of any married woman's certificate indicating that Hattie D. Raymond was doing business in Worcester.

The plaintiff, at the close of the evidence, requested the judge to rule that he had made out his case; that the defendant had established no defence; and that his finding should be for the plaintiff for the amount of the tax. The judge refused so to rule; found that the plaintiff was the owner of the stock of goods, or had such an interest in them as to be liable for the tax thereon; and found for the defendant. The plaintiff alleged exceptions.

*E. R. Anderson*, for the plaintiff.

*A. P. Rugg*, for the defendant, was not called upon.

KNOWLTON, J. At the close of the evidence, the plaintiff requested the court to rule that he had made out his case, and that the defendant had established no defence. The court re-

fused so to rule, and found that the plaintiff was the owner of the stock of goods, or had such an interest in them as to be liable for the tax. The only question presented by the bill of exceptions is whether, upon the evidence, the judge was bound, as matter of law, to find for the plaintiff. It was an undisputed fact that the goods belonged to some one who did business under the name of George J. Raymond and Company. The plaintiff testified that his wife, Hattie D. Raymond, was the sole proprietor of the business and owner of the property of the firm of that name. The contention of the defendant was that this testimony was untrue. The plaintiff admitted that for about ten years prior to 1882 he had carried on business in the name of George J. Raymond and Company in selling clothing and men's furnishing goods; that in 1882 he had a store in Tremont Row in Boston, and went into insolvency; that his business was closed, and that on account of that the business was afterwards conducted in his wife's name; that they began to have stores outside of Boston three or four years before they went to Worcester; that in 1891 they bought out a firm in Worcester that was doing business as the Bay State Clothing Company, and he continued to do business at the same store; that he made the arrangements about hiring the store, and engaged a local manager; that he helped to sell the business to some one else; that he represented the owner largely in the sale, perhaps fully; that he did not think he said anything to Taylor, of whom he hired the store, or to Dalrymple, whom he engaged as local manager, about Hattie D. Raymond. There was other evidence tending to show that in doing the business and making the arrangements in regard to the business, he talked and acted as if he were the sole proprietor, and made no representation or disclosure that his wife had any interest in the property or business. His wife never filed a certificate in Worcester stating that she was doing business as a married woman on her sole and separate account, under the provisions of the Pub. Sts. c. 147, § 11.

Upon all the evidence in the case, the judge might well disbelieve the plaintiff's testimony in regard to his wife's ownership of the property, and find that his mode of dealing with the property truly represented his ownership of it.

*Exceptions overruled.*