CHARLES N. BRUSH & others *vs.* CITY OF NEW BEDFORD.

Bristol.     October 27, 1924. — January 10, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Tax,* Assessment, On goods stored in warehouse.

A firm of cotton brokers, to whom were issued negotiable warehouse receipts for cotton stored in a public warehouse in New Bedford, pledged the receipts to a bank to secure a note given by them to the bank in payment of a draft, which had been attached to a bill of lading of the cotton in their favor and which had been sent by the seller to the bank for collection, and made a contract with one, who had agreed to purchase the cotton before the brokers ordered it shipped, whereby they delivered a sales note to the purchaser stating in substance that "We have sold you on your order . . . [the] Bales of Cotton" ordered, which is "to be stored in New Bedford but not to be carried more than six . . . months from date of invoices." "The cotton to be stored and insured by you for us until paid for, but the title not to pass from us until paid for; nor until the surrender of your Receipt issued to us against the same." The city assessed a tax upon the brokers for the cotton. *Held,* that the assessment was proper under G. L. c. 59, § 75, because the agreement between the broker and the purchaser especially provided that "title not to pass from us until paid for; nor until the surrender of your Receipt issued to us against the same," and it appeared that the purchaser had not made payment when the tax was assessed.

COMPLAINT, filed in the Superior Court on July 2, 1921, appealing from a refusal by the assessors of taxes of the city of New Bedford to abate a tax of $5,561.04 assessed against the complainants.

In the Superior Court, the complaint was heard by *Lummus,* J. Material evidence is described in the opinion. The complainants asked for the following rulings, which were refused by the judge:

"1. The word 'owner' as used in Acts of 1909, c. 490, Part I, § 23 as amended by Acts of 1918, c. 129, means the person who has the benefits and runs the risks of the ordinary incidents of ownership and not one who merely has a security title.

"2. The petitioners had only a security title in the property in question and, therefore, were not 'owners' thereof within the meaning of the statute in question."

"5. The negotiation of certain negotiable warehouse receipts standing in the name of complainants to National Banks and Trust Companies before April 1, 1920, and which were held on that date by such national banks and trust companies conveyed to said banks and trust companies such title to the goods as complainants had and the assessment to complainants of the property represented by such receipts was illegal and void."

"9. The complainants are entitled to an abatement of $5,743.43 and interest.

"10. The complainants are entitled to an abatement of $5,134.63 being the amount assessed on such of the bales as had been negotiated before April 1, 1920."

The judge found for the respondent, ordered judgment for its expenses and costs, and reported the case to this court for determination.

The case was submitted on briefs.

*O. S. Cook, M. R. Brownell, & Frederic H. Taber,* for the complainants.

*B. B. Barney,* for the respondent.

BRALEY, J. This is an appeal under G. L. c. 59, § 65, from the refusal of the assessors of the city to abate a tax on two thousand eight hundred and seventy-eight bales of cotton alleged to have been taxable to the complainants on April 1, 1920. The trial judge having found and ordered judgment for the respondent, the case is before us on the complainants' exceptions to the refusal to give the first, second, fifth, ninth and tenth requests, and to all the findings and rulings inconsistent therewith.

St. 1909, c. 490, Part I, § 23, as amended by St. 1918, c. 129, under which the assessment was levied, reads as follows: "All personal estate, within or without the Commonwealth, shall be assessed to the owner in the city or town in which he is an inhabitant on the first day of April, except as provided in Part III and in the following clauses of this section: First, All tangible personal property, except ships and vessels, shall

be taxed to the owner in the city or town where it is situated on the first day of April."

The question for decision is, whether the complainants on April 1, 1920, were the owners of the cotton within the meaning of the statute. It was stored in public warehouses in the city, for which negotiable warehouse receipts were issued in the name of the complainants, who were non-resident cotton brokers. It may be said at the outset that the receipts were documents of title under G. L. c. 105, §§ 46, 54, and that as between the complainants and the purchasers, title could be passed at such time or times as the parties mutually intended. G. L. c. 106, § 20 (1). The general course of business as described in the record shows, that upon receiving an order for raw cotton from a local mill, they bought from a southern dealer at a less price the exact quantity ordered. The dealer then shipped the cotton consigned to them, and at the same time forwarded to "some bank in or near " the city the bill of lading to which was attached a sight draft drawn on the complainants for the price. But before arrival they delivered to the mill a sale note, stating in substance, that " We have sold you on your order . . . 66 Bales of Cotton" ordered, which is "to be stored in New Bedford but not to be carried more than six . . . months from date of invoices." "The cotton to be stored and insured by you for us until paid for, but the title not to pass from us until paid for; nor until the surrender of your receipt issued to us against the same." The exceptions recite that upon the coming in of the bill of lading, the complainants made arrangements with the bank to have the cotton stored in a warehouse designated by the mill, and the receipt which issued ran to them, or to their order, and thereupon they pledged it to secure their note for an amount equal to the draft, to the payment of which the proceeds of the note were to be applied. The storage and insurance charges were paid by the mill pending the time when it should pay the complainants the purchase price, who then could use the money in payment of their note to the bank, and receive the pledged receipt, which upon transference to the mill enabled it to obtain delivery. Of the two thousand eight hundred

and seventy-eight bales, two thousand five hundred and seventy-two bales were to be thus transferred. The only difference as to the payment for the remaining three hundred and six bales was, that instead of borrowing on the receipts, they used their own funds in settlement of the draft. It appears, and the judge so found, that the cotton intended for each mill was separate, and could be identified, and that the taking of the receipts furnished the complainants with security for payment of the price. But throughout all the transactions in whatever light they may be viewed, the provisions of the sale note, that " title not to pass from us until paid for; nor until the surrender of your Receipt issued to us against the same," has never been abrogated nor modified. The mill could not obtain possession, nor acquire ownership until payment, and the title consequently remained in the complainants, who under the mode of dealing either held or controlled the receipts for all the cotton on April 1, 1920, payment for which by the mill was yet to be made. The assessment to them as owners was justified by the statute. *Raymond* v. *Worcester*, 172 Mass. 205. See *Donovan* v. *Haverhill*, 247 Mass. 69, 72.

We find no error of law in the denial of the requests, or in the rulings, to which the petitioners excepted.

*Exceptions overruled.*