CHARLES P. SUMNER *vs.* JOHN D. GARDINER & others.
ARTHUR D. SUMNER *vs.* SAME.

Essex.    November 5, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Partnership. Evidence,* Competency, Admissions.

To show that the defendants in an action of contract for goods sold and delivered were partners of a certain firm to which the plaintiff had sold the goods, postal cards and a letter received by the plaintiff representing the defendants as members of the partnership were held to have been admitted in evidence rightly, having been found by the jury to have been issued and written in the usual course of business and by authority of the defendants.

A failure to reply to a statement which if true calls for denial is evidence that the person maintaining silence admitted the truth of the statement.

In an action of contract against several defendants as members of a partnership, the plaintiff, in order to show that one of the defendants was a member of the partnership, may testify that he made a statement to this defendant that he understood that this defendant was a member of the partnership and that he had brought his action to prove it, and that the defendant made no reply.

Two ACTIONS OF CONTRACT, one by Charles P. Sumner and the other by Arthur D. Sumner both against John D. Gardiner and George R. Beardsell, of Lynn, and Charles A. Ford who was made a defendant by amendment, as copartners doing business under the name of the Boston Shoe Stock Company, for certain sums alleged to be due to the respective plaintiffs for goods sold and delivered according to accounts annexed. Writs dated September 13, 1897.

No service of the writs was made upon Ford, but he voluntarily came into court, and filed a suggestion of bankruptcy and his discharge therein.

The cases were tried together before *Wait*, J. The plaintiffs requested the judge to default the defendant Ford for failure to answer interrogatories filed by the plaintiffs, and for want of an answer to the plaintiffs' declarations. As to this the judge reserved his decision, and the cases proceeded to trial against Gardiner and Beardsell only.

The plaintiffs throughout the trial contended that, before and at the time the goods mentioned in the plaintiffs' declarations were sold, a partnership had been formed and existed between Ford and the other defendants under the name of the Boston Shoe Stock Company, or that Ford and the other defendants had held themselves out as copartners in the business of the Shoe Stock Company, or that Gardiner and Beardsell were the principals and Ford the agent in the business.

The defendants Gardiner and Beardsell denied that any such copartnership had ever been formed, or that they had ever held themselves out as copartners with Ford, or that he ever had acted as their agent.

The two postal cards and a letter, sufficiently described in the opinion, were offered in evidence by the plaintiffs and were admitted by the judge against the objection of the defendants.

The jury returned a verdict for the plaintiff Charles P. Sumner in the sum of $1,249.05, and a verdict for the plaintiff Arthur D. Sumner in the sum of $866.85. The defendants Gardiner and Beardsell alleged exceptions.

*W. H. Niles*, for the defendants Gardiner and Beardsell.

*M. A. Pingree*, for the plaintiffs.

BRALEY, J. It was necessary for the plaintiffs to prove that a copartnership existed between the defendants as alleged in their writs, and that at the time the debts sued upon were contracted the defendants were doing business as the Boston Shoe Stock Company.

As tending to support this allegation they offered in evidence and the judge admitted two postal cards containing among other things a statement from which it might be inferred that the defendants Gardiner and Beardsell either composed the company or were connected with it.

Bearing on the relation of the defendant Gardiner to the contract declared on, a letter was also put in evidence written by the defendant Ford, in which Gardiner was represented as a member of the firm of Gardiner and McManus, to which Gardiner and Beardsell were represented as successors.

The only question raised is whether there was any evidence connecting the defendants with the postal cards and letter. The order in which the proof was introduced is wholly immaterial and there was evidence both circumstantial and direct from which a jury might find that the defendants Gardiner and Beardsell were doing business as Gardiner, Beardsell and Company in manufacturing the "Hatch Counter"; that the Boston Shoe Stock Company sold this counter, and that the defendant Gardiner was frequently at the office on Summer Street and subsequently at the one on Lincoln Street at each of which places the Boston Shoe Stock Company and Gardiner, Beardsell and Company purported to be carrying on business. Signs were put up at each place showing in connection the names of Gardiner, Beardsell and Company and Boston Shoe Stock Company.

The evidence of the plaintiff Arthur B. Sumner was to the effect that prior to the order given to his firm a postal card had been received by him which was like one of those admitted in evidence stating that "Gardiner, Beardsell & Co., Successors to Gardiner & McManus . . . Men's Department, Boston Shoe Stock Co.," were to be found at "135 Summer Street, Boston. C. A. Ford, Manager." He called there at the time he obtained the order and found the defendant Gardiner "sitting at the desk of the Boston Shoe Stock Company" and had some talk with him about selling the counters which the plaintiffs were engaged

in making, and during that talk the defendant Gardiner told him " that he was running the men's department of the Boston Shoe Stock Company, that he was behind it," and also " that Gardiner and Beardsell was behind the Boston Shoe Stock Company in the men's department, and that I should get my pay for these goods." After this conversation he received the letter written by Mr. Ford and another postal card similar to that admitted at the trial announcing the removal of Gardiner, Beardsell and Company and the Boston Shoe Stock Company from Summer Street to Lincoln Street.

This evidence tended clearly to show that the defendant Gardiner at least was doing business as claimed by the plaintiffs, and that after the order had been given to make the counters Ford wrote the letter admitted in evidence and for aught that appears from the bill of exceptions must have obtained this information from Gardiner and it may fairly be inferred that the letter was written by his direction.

It is argued by the defendants that even if the postal cards and letter are competent as admissions made by Gardiner they should not be received as evidence against the defendant Beardsell. But George W. Folger, a witness called by the plaintiffs, among other things, testified in substance, that he was in the employment of Gardiner, Beardsell and Company and was present when Charles P. Sumner, one of the plaintiffs, met the defendant Beardsell and introduced them to each other, and at that time a conversation took place between them. " Mr. Beardsell says, ' how do you do, I have heard of you before.' " To which Mr. Sumner said " I didn't connect you in any way, shape, or manner with the Boston Shoe Stock Company. I understand from Mr. Ford that you are connected, and I had no other way to prove it but by bringing suit." To this assertion Beardsell made no reply. It would be open for a jury to say whether under all the circumstances, a suit having been brought in which it was alleged that he was a partner of Gardiner and that they were doing business as the Boston Shoe Stock Company and his attention being called by one of the plaintiffs to this contention and the direct statement made to him that he was connected with the company, he was called upon to deny the statement if such was not the fact. And his failure to make

any denial where naturally it would be expected, might cause his silence to be construed as an admission by him of the truth of the allegation.  *Commonwealth* v. *O'Brien,* 179 Mass. 533, 534.

Under the instructions which carefully guarded the rights of the defendants, the jury by their verdicts must have found that the postal cards were issued and the letter written in the usual course of business and by the authority of the defendants.

*Exceptions overruled.*