WILLIAM PALMER *vs.* PATRICK COYLE.

Bristol.    October 24, 1904. —January 3, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Master and Servant. Negligence,* Employer's liability. *Animal.*

If a baker employing a large number of men tells the driver of one of his wagons that in his absence he can ask his brothers for any further instructions as to conducting the business that may be necessary, and in consequence of this direction the driver asks one of the baker's brothers about an assistant to aid on the team in the delivery of goods to take the place of a boy then absent, and says that he probably can get a boy, to which the baker's brother replies " all right," and if the driver previously has told the baker himself that he probably could get a certain boy named, to which the baker replied " all right," and thereupon the driver asks the boy whom he has named to the defendant to accompany him as an assistant and tells him that he will receive certain wages, and the boy complies, and is injured on the first day of his employment, it can be found that the boy was hired by the driver either with the knowledge and assent of the baker, or of his brother who had authority to act for him in his

absence, and that the boy was the servant of the baker at the time of his injury.

In an action by a boy employed as an assistant on a baker's wagon against his employer, for an injury from being kicked by a horse of the defendant drawing the wagon when hit on the heels by the whiffletree upon the breaking of the breeching strap near a buckle, if it appears that the whiffletree would not have come in contact with the horse had not the breeching strap broken as it did and that the harness was an old one, there is evidence to go to the jury on the issue whether the harness was defective.

Evidence of single instances of misconduct on the part of a horse, such as kicking and running away, is admissible to show that the general character of the horse is vicious.

Whether a horse on account of habits of shying and running away is more likely to behave in a vicious manner when a wagon presses against him and a whiffletree drops on his heels is a question of fact for the jury.

In an action by a servant against his employer for injuries from being kicked by a horse of the defendant alleged to be vicious, whose viciousness it is alleged the defendant by the exercise of reasonable care ought to have known, after evidence of specific instances of misconduct on the part of the horse, such as kicking and running away, further evidence of the reputation of the horse is admissible to prove the defendant's knowledge of his vicious qualities. For this purpose it is competent to show that because of such propensities the horse was driven with another horse by the defendant's servants as it was not thought safe to drive him alone, and also to show a conversation in the defendant's presence in which the horse was referred to as a "runaway."

TORT, by a boy eleven years old when injured, against his employer, for injuries from being kicked by a horse alleged to be vicious, driven in a baker's wagon of the defendant by the plaintiff's uncle by marriage, to assist whom the plaintiff had been employed, with three counts described in the first paragraph of the opinion, one of which, under the employers' liability act, was waived as there stated.    Writ dated July 9, 1902.

At the trial in the Superior Court before *Hitchcock*, J., it appeared, that the accident happened in the town of Mansfield, and that while the plaintiff's uncle by marriage was driving the defendant's horse out of a yard in that town the breeching strap on the harness broke near a buckle and the whiffletree hit the heels of the horse, who began to kick and run and almost at the first kick broke the plaintiff's leg.    The evidence admitted against the objection of the defendant, in regard to the former acts and reputation of the horse, and that in regard to the employment of the plaintiff, are described sufficiently in the opinion.    At· the close of the evidence, the defendant asked the judge to rule that upon all the evidence the plaintiff was

not entitled to recover. The judge refused to rule as requested, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $3,000. The defendant alleged exceptions.

*F. S. Hall,* (*R. P. Coughlin* with him,) for the defendant.

*W. A. Swift,* (*J. B. Tracy* with him,) for the plaintiff.

BRALEY, J. At the close of the evidence the plaintiff waived the third count of his declaration in which he sought to recover under R. L. c. 106, § 71, and the case was submitted to the jury on the first and second counts at common law for injuries caused to him by a vicious horse, or a defective harness, each furnished for his use while in the employment of the defendant.

Under either count he would be required to prove that the relation of master and servant existed between them, and for this purpose he introduced evidence, that the defendant, who was a baker, employed a large number of men, among whom was one Charles Campbell, an uncle of the plaintiff, who drove one of the bakery wagons, and was a witness at the trial. He testified that the defendant told him that in his absence he could ask the defendant's brothers for such further instructions in the conduct of the business as might be necessary. In consequence of this direction, Campbell asked the defendant's brother, Owen Coyle, about an assistant to aid him on the team in the delivery of goods, and to take the place of a boy who had previously acted in this capacity, but was absent at the time.

Before this, in a talk with the defendant himself, the witness had stated that he probably " could get the Palmer boy," and that the defendant said " all right," and in the talk with the defendant's brother, the witness said " probably I could get a boy," to which the reply was " all right." After these conversations, and finding it necessary to have an assistant, the witness then asked the plaintiff to accompany him as such, and told him that he would receive as wages " fifty cents a day and his meals." The plaintiff complied, and was injured on the first day of his employment while riding with his uncle, and assisting him in his work. From this evidence notwithstanding the defendant's denial, it could be found that the plaintiff was hired by Campbell, either with the knowledge and assent of the defendant, or of his brother, who had authority to act for him in his absence. *Thomas* v. *Wells,* 140 Mass. 517.

By his contract of service the plaintiff assumed the risk of injury from the negligence of a fellow servant, and if Campbell was careless in selecting, or using, a defective harness, when he might have taken or used a sound one, and the plaintiff was thereby injured he cannot recover.

But the only evidence that at the time all the harnesses from which a choice could have been made were sound came from the defendant and his witnesses, whom the jury were not bound to believe. It appeared that the wagon would not have gone forward and let the whiffletree come into contact with the horse if the breeching strap had not broken at the buckle, and this taken in connection with the statement that the harness was an old one was some proof for the consideration of the jury that it was defective.

It must be presumed that the case was submitted to the jury under sufficient instructions, as no reference is made in the exceptions that they were not full and proper and a verdict on the second count, as matter of law, could not have been ordered for the defendant. *Devine* v. *Murphy,* 168 Mass. 249.

The first count does not charge the defendant with negligence in furnishing a vicious horse as an industrial appliance for the plaintiff's use. See *Green & Coates Street Passenger Railway* v. *Bresmer,* 97 Penn. St. 103 ; *Gray* v. *Floersheim,* 164 Penn. St. 508.

But the right to recover under that count rests on the ground that the horse was " wild, vicious, unruly and accustomed to kick ", and that the defendant knew, or in the exercise of reasonable care ought to have known of these habits. *Popplewell* v. *Pierce,* 10 Cush. 509, 511. It was thus incumbent on him to prove this allegation.

In this State it has been held that the reputation of human beings cannot be shown by proof of specific incidents of misconduct. *Miller* v. *Curtis,* 158 Mass. 127. *Connors* v. *Morton,* 160 Mass. 333, 335, and cases cited.

This rule, however, does not apply where the disposition of an animal is in issue. For this purpose single instances, of which there were several, when the horse exhibited many of the traits described, both before and after the accident, were admissible in proof of its general character. *Todd* v. *Rowley,*

8 Allen, 51, 58. *Maggi* v. *Cutts,* 123 Mass. 535. *Broderick* v. *Higginson,* 169 Mass. 482.

How far a horse addicted to the habits of shying or running away would for this reason be more likely to act in a vicious manner when subjected to the experience of a wagon pressing against him, and a whiffletree dropping upon him while he was being driven, was a question of fact.

As a result of common observation it could not be said, that such a horse would be less susceptible to fright from this cause, or that his previous habits would not tend to produce a nervous condition that would indicate his probable action on this occasion, or that kicking might not be a part of his usual conduct previous to running away. His former vicious acts, which included kicking, might be considered as indicative of his disposition, and to furnish a forecast of what he would do when exposed to such an accident. *Lynch* v. *Richardson,* 163 Mass. 160. Compare *Eastman* v. *Scott,* 182 Mass. 192.

After evidence had been introduced tending to show an exhibition of the specific traits charged in the declaration, the sufficiency of which to support the issue was for the jury, further evidence of the reputation of the horse became admissible to prove the defendant's knowledge of his vicious qualities. *Monahan* v. *Worcester,* 150 Mass. 439. *Broderick* v. *Higginson, ubi supra.*

For a similar purpose it was competent to show that because of such propensities, the horse was driven with another horse when used by the defendant's servants as it was not thought safe to drive him alone, as well as the fact of the conversation in the defendant's presence when reference was made to him as the "runaway." *Sumner* v. *Gardiner,* 184 Mass. 433, 436.

The weight to be given to the evidence is not before us, and while a verdict for the defendant well might have been returned, we cannot say that there was any error of law in submitting the case to the jury on the various issues that have been discussed.

*Exceptions overruled.*