SARAH LINDENBAUM *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & others.

JULIUS L. LINDENBAUM *vs.* SAME.

BESSIE ADELMAN *vs.* SAME.

IKE ADELMAN *vs.* SAME.

Suffolk.    November 12, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence. Joint Tortfeasors. Street Railway. Evidence,* Presumptions and burden of proof, Of identity, Uncontradicted may be disbelieved, Of violation of rules to show negligence. *Witness,* Refreshing recollection. *Practice, Civil,* Verdict, Exceptions.

If a passenger in a car of a corporation operating a street railway is injured by reason of the car being stopped negligently in a place where it is run into negligently by a train of another corporation operating a freight railroad, he can sue the two corporations jointly, his injuries being the result of their combined carelessness in the simultaneous performance of unconnected duties. Following *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575.

In an action against a corporation operating a street railway for injuries incurred, while being transported as a passenger in a car of the defendant, from the car being struck in the rear by a freight train at a switch and pushed around the switch into another street car which had come from the opposite direction and was waiting for a chance to cross the switch, there was evidence that before the accident the freight train was approaching on its track at the rate of about three or four miles an hour, and that the street car from the opposite direction had stopped at the switch to let the train pass over the junction of the tracks. There was no evidence of any obstructions in the street. *Held,* that the jury were warranted in finding that the defendant's motorman, before he crossed the track of the freight railroad, ought to have seen the freight train coming on that track and also the street car approaching from the opposite direction and ought to have known the arrangement of the tracks and switches and have known that if he put his car where he did it might be caught in a trap as it was, that his stopping the car in the wrong place was the cause of the accident, and that it was a question for the jury whether in driving the car to the place where it was stopped he exercised the highest degree of care that was reasonable under the circumstances.

In an action against a corporation operating a street railway for injuries incurred,

while being transported as a passenger in a car of the defendant, from a collision with a freight train at a switch crossing, where there is no direct evidence as to the rate of speed at which the car in which the plaintiff was being transported was moving before it was stopped in the wrong place and caused the accident, and such rate of speed has to be taken into account in considering whether the motorman ought to have seen a freight train approaching on the intersecting track, in the absence of such direct evidence, it can be assumed that the car was moving at the rate of speed usual at such a place.

In an action for personal injuries, where the plaintiff was treated for her injuries at a relief station of a hospital, a yellow paper and a white card were introduced in evidence without objection containing memoranda relating to the accident and to treatment at the hospital, the yellow paper being stated by a witness to be the accident report and the white card to be the clinical record. At the head of each of these papers was written the name and address of the plaintiff. A physician was called as a witness who testified that at the time of the accident he treated cases at the relief station, and that according to the practice at the relief station the contents of the yellow paper and the name and address at the head of the white card were written when the patient was brought to the station and that the white card accompanied the patient when brought to the accident room for treatment. He testified that all the writing on the white card introduced in evidence, except the name and address at the head, was his. It appeared that the person who wrote the name and address was dead. The witness testified that he did not know the plaintiff or whether he ever treated her and did not know the handwriting of the person who wrote her name and address on the white card. The presiding judge found that the handwriting on the yellow paper and of the plaintiff's name and address on the white card were the same. The plaintiff offered to prove that on the day of the accident there was no other person of her name at the relief station. The judge thereupon allowed the witness to refresh his recollection by the white card, and to testify about treating the person named on the card, and ruled that it was for the jury to say whether the person treated was the plaintiff or not. *Held,* that the ruling was right; there being no question of the right of the witness to refresh his recollection by a memorandum made by him at the time from his personal knowledge, and there being ample evidence that the person named on the card and treated by the witness was the plaintiff.

A jury are not obliged to accept evidence as true because it is uncontradicted.

In an action against a corporation operating a freight railroad, upon the issue whether the engineer of a slowly moving train of the defendant was negligent in not stopping his train before reaching a junction of the freight track with the tracks of a street railway company when cars transporting passengers were approaching from both directions on those tracks, rules of the defendant for the running of its trains were introduced in evidence by the plaintiff against the defendant's exception. The defendant's superintendent who produced the rules testified that some of them had been modified orally and that they were in force except so far as they were modified orally. He also testified that the employees were " supposed to have these rules furnished to them," and that it was the duty of the train master to see that the employees running a train were " furnished with a copy of these rules." He testified, " These rules that are before me apply to the " defendant. *Held,* that this warranted the jury in finding that there were no oral modifications of these rules, or at any rate none that had been put in force.

In an action against a corporation for personal injuries caused by the alleged neg-

ligence of the defendant's servants, where rules of the defendant alleged to have been violated have been introduced in evidence by the plaintiff against an exception of the defendant relating to their admission as a whole, if it is open to the defendant on the argument of its exception to object that some of the rules admitted had no bearing on the issues then being tried, this objection cannot prevail, because if such rules were immaterial the defendant could not have been harmed by their admission in evidence.

FOUR ACTIONS OF TORT, all against the New York, New Haven and Hartford Railroad Company, the Boston and Northern Street Railway Company and the Union Freight Railroad Company, the actions of Sarah Lindenbaum and Bessie Adelman being for personal injuries incurred on July 9, 1902, when they were passengers on a car of the Boston and Northern Street Railway Company, in the manner described in the opinion, and the other two actions being by their respective husbands for consequential damages suffered by reason of such injuries.

The defendants demurred on the ground that they were not liable jointly. The demurrers were overruled by *Richardson, J.,* and the defendants appealed.

The four cases were tried together before *Schofield, J.* The judge ordered a verdict for the New York, New Haven, and Hartford Railroad Company in each of the cases. The jury returned verdicts against the other two defendants, for the plaintiff Sarah Lindenbaum in the sum of $2,300, for the plaintiff Julius Lindenbaum in the sum of $500, for the plaintiff Bessie Adelman in the sum of $500, and for the plaintiff Ike Adelman in the sum of $100. The defendant the Boston and Northern Street Railway Company and the defendant the Union Freight Railroad Company each alleged exceptions, presenting separate bills of exceptions, both of which were allowed by the judge, raising the questions which are considered in the opinion. On page 317 is a reduced copy of the plan referred to in the opinion.

*J. L. Hall & D. E. Hall,* for the Boston and Northern Street Railway Company and the Union Freight Railroad Company.

*C. W. Bartlett & A. Bon,* for the plaintiffs.

LORING, J. The two women plaintiffs, whom for convenience we shall speak of as the plaintiffs, were passengers on an outward bound subway car of the Boston and Northern Street

Railway Company, on the evening of July 9, 1902. This car passed from the subway on to Causeway Street until it came to the switch shown on the plan, which was set to throw outbound cars on to Beverly Street. A car on the inbound track, which

had come along Causeway Street, prevented the plaintiffs' car from going into Beverly Street. This inbound car was prevented from going ahead and getting out of the way of the plaintiffs' car by a train on the Union Freight track. The Union Freight train did not stop in time, and ran into the rear end

of the plaintiffs' car. The plaintiffs' car was pushed around the switch into the inbound car and the two plaintiffs were injured by the collision.

1. The plaintiffs' right to sue the two defendants jointly is settled by the recent case of *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575.

We will deal first with the exceptions taken by the Boston and Northern Street Railway Company.

2. The Boston and Northern Street Railway Company rested on the plaintiffs' evidence so far as liability was concerned.

Its contention is that on the plaintiffs' evidence the cause of the cars coming together as they did was a matter of conjecture (as in *Childs* v. *American Express Co., post,* 337) and that the evidence of the plaintiffs did not go far enough to warrant a finding that the accident was caused by the negligence of the motorman of the defendant.

There was evidence that the engine of the train of the Union Freight Railroad Company, when first seen by the plaintiffs' witnesses, was from fifteen to forty feet away from the rails of the inward bound track on Causeway Street. To make plain which is the inward and which the outward bound track, it is to be understood that the railways using these street railway tracks ran on the right. The freight train was on the track between the Boston and Maine station and the Fitchburg station, and was going toward Causeway Street at the rate of three or four miles an hour. At this time the defendant's car here in question was stopping, or had come to a stop, at the Beverly Street switch, and was blocked by an inward bound car which stood over the switch or so near to it as to prevent the car here in question from turning into Beverly Street. There was no evidence of any obstructions in the street. On this evidence the jury were warranted in finding that the defendant's motorman, in the exercise of the care which this company owed to the plaintiffs, before he crossed the Union Freight track ought to have seen the train coming on the Union Freight track and the inward bound car coming west on the inward track, and ought to have known the arrangement of the tracks and switches, and that if the switch was set for Beverly Street he would be caught in the trap he was caught in.

3. The exception to the refusal to give the twenty-ninth and thirtieth rulings * asked for must be overruled.

These were two out of forty-three requests for rulings asked for by this defendant (the Boston and Northern Street Railway Company), and one of the forty-three consisted of six subdivisions.

The cause of the accident was the stopping of the defendant's outward car where it did stop. To tell the jury that "the defendant Boston and Northern Street Railway Company had a right to stop its car at any point upon the street," as the defendant requested in the twenty-ninth ruling asked for would have been misleading, and the misleading element is not cured or even helped by the rest of that ruling.

The same is true of the thirtieth ruling asked for.

This defendant now seeks to uphold its exception to the refusal to give these rulings by urging that the accident was caused by this defendant's crossing the Freight Railroad's track and not by stopping its car where it did, as distinguished from crossing the tracks. For after crossing the track it was forced to stop by the Beverly Street switch and the inbound car. We have looked at the four parts of the charge to which counsel for this defendant has referred us in this connection. After a careful examination of these portions of the charge and of the charge as a whole, we are of opinion that the question was left properly to the jury, and that the charge is not open to the objection now urged. The jury were told in substance that to find for the plaintiff they must find that in stopping where they did, including all that led up to making that stop, or, more specifically, in driving the car to the place where it was stopped, the defendant's agents did not exercise the highest degree of care that was reasonable under the circumstances.

There was nothing in these requests, handed in as they were

---

\* 29. The defendant Boston and Northern Street Railway Company had a right to stop its cars at any point upon the street and the jury is not entitled, upon the evidence competent for it to consider, to find said defendant, its agents and servants, negligent in stopping said car at the time and place it did.

30. The jury would not be warranted in finding negligence upon the part of the defendant Boston and Northern Street Railway Company because of the fact that it stopped its car at the time and place it did.

as two out of forty-three rulings asked for, which called the attention of the judge to the point which it is now urged the defendant wished to have made plain to the jury.

4. The next exception argued is to the refusal to give the rulings asked for numbered 33 a, b and c.*

We are of opinion that the jury were warranted in finding that the Freight Railroad train must have been in sight coming toward the junction of the two tracks before the car in question reached the cross-over, and so near to the outward bound track as to warrant a finding that it was negligence for the defendant's motorman to cross.    For that reason 33 a and 33 b were properly refused.    In that case 33 c was properly refused as immaterial.

5. The next exception is to the refusal to give ruling 33 f.†

We are of opinion that the presence of the inward bound car across the Beverly Street switch when the outward bound car here in question reached that point, in the absence of evidence of any obstruction, warranted the finding that it would have been seen by the motorman of the outward bound car if he had exercised the care owed by his company to the plaintiffs.

6. After explaining at length that the plaintiff had to prove negligence in the defendant in allowing its outward bound car to be caught in the trap it was caught in, the presiding judge summed up this matter in these words : " As I have said to you, gentlemen, you are to determine what the facts and circumstances were.    You are to pass upon the question of the rate

---

* 33. Upon all the evidence competent for the jury to consider upon the case against the defendant Boston and Northern Street Railway Company the jury would not be warranted in finding either

a. That the dummy engine so called was in motion when the defendant street railway company's car left the subway station and proceeded along towards the switch, or

b. That it was so near to the track upon which said street car was proceeding as to render it negligent for the servants of said street railway company to propel said car towards the switch, or

c. That any warning of the approach of said Union Freight Railroad Company's train was given to the car by lantern or otherwise.

† 33. Upon all the evidence . . . the jury would not be warranted in finding

f. That the car upon the inbound track was at or upon or so near the switch over which said car was to pass, at the time said car left the subway station, as to render it negligent for said car to be propelled to said switch.

of speed at which the car of the Boston and Northern was run after coming out of the subway in Causeway Street up to the place where the collision occurred.   You are to determine upon the evidence — that is, the evidence as it stood at the time when the defendant the Boston and Northern rested — as to where the freight train of the other defendant, the Union Freight Company, was.   You are to decide what the fact was in regard to the relative position of those two objects, the car on one side and the freight train on the other, the speed at which they were moving, and everything relating to their operations down to the time when the collision occurred."

This defendant "excepted to that portion of the charge in which the court submitted the question to the jury to determine the rate of speed at which the car was run from the subway to the point of collision, said defendant claiming that there was no evidence upon that point at all."

Although there was no evidence as to the rate of speed of the outward bound car, the rate of speed of that car had to be taken into account in considering whether the freight train was visible to the motorman, and in the absence of direct evidence on the point the usual rate could be assumed.   This portion of the charge meant nothing more than this.

7.   The next exception raises a question of evidence.

A police officer testified that he took the plaintiff in the first case, Mrs. Lindenbaum, in an ambulance to the relief station of the city hospital.   A record from the city hospital itself of cases treated at the relief station of the hospital was put in evidence without objection on the part of the defendants.   It appeared that the city hospital is in Harrison Avenue and that the relief station is in Haymarket Square.

This record was the record of the case of "Sadie Lintenbume." The record was as follows: "Brought to the hospital at 3 minutes past 10 by police ambulance station one, officer Kelliher. Patient lived at 86 Arlington st., Chelsea.   Married.   Color: white.   40 years of age.   Time of accident, 9.50 p. m.   Place and circumstances; corner of Causeway and Beverly sts.   Officer stated that patient was on an electric car which was struck by a dummy engine of the Union Freight Co.   Injury; contusion of elbow.   Examined by Dr. Germaine and attended by

Dr. Germaine. Admitted to the out-patient department and
sent home. Record by C. W. Malcom." Later a clerk from
the relief station produced a yellow paper and a white card.
Upon the yellow paper were these words : " Sadie Lintonbune,
living at 86 Arlington Street, Chelsea, received treatment on
July 9, 1902, at the Relief Station. Diagnosis: contusion of
elbow. About 9.50 P. M., corner of Causeway and Beverly sts.,
officer states that patient was on an electric car which was
struck by a dummy engine of the Union Freight Company.
She was brought in by police ambulance, station one; 40 yrs
of age and married." This yellow paper was admitted without
objection. The clerk who produced the yellow paper testified
that it (the yellow paper) was the accident report and the
white card the clinical record. The plaintiff then called Dr.
Germaine, who testified that in 1902 he treated patients at the
relief station. He also testified that all the writing on the
white card except the first two lines was his. The first two
lines were as follows: " Name, Lintonbune, Sadie. Address,
86 Arlington St." Dr. Germaine further testified that accord-
ing to the practice of the relief station the yellow paper and
the first two lines of the white card are written out when the
patient is brought to the station, and the white card accom-
panies the patient when he or she is brought into the accident
room, and that the physician who treats the patient writes on
the white card his record of the case. At the time in question
it was the duty of one Malcom to write the first two lines of
this white card, and that Malcom is now dead. Dr. Germaine
testified also that he did not know the plaintiff or whether he
ever treated her, and did not know Malcom's handwriting.
The presiding judge from an inspection of the yellow paper and
the white card was of opinion that the handwriting of the first
two lines of the white card was the same as that of the yellow
paper. Upon the plaintiff's offering to prove " that there was·
no other Lindenbaum in that place [the relief station] that day,"
the judge allowed Dr. Germaine to refresh his recollection by
the white card and to testify " about treating the person [named
in the white card], and it is for the jury to say whether Sadie
Lintonbune was the plaintiff or not." Both defendants took an
exception to this ruling.

The ruling was plainly right.  There can be no question of the witness's right to refresh his recollection by a memorandum made by him at the time from his personal knowledge.  All that the witness was allowed to testify to was that the person named on that card had traumatic hysteria.  There was ample evidence warranting the jury in finding that that person was the plaintiff.  All patients come into the accident room of the relief station with such a white card.  The only remaining question is : Was the person who came into the treatment room tagged as " Sadie Lintonbune " the plaintiff?  We are of opinion that she was.  There was evidence that the plaintiff was brought to the relief station that day, and that no other person of a like name was admitted to the relief station on that day.  That would have been enough.  But in addition the record and yellow paper were admitted in evidence without objection; their admission in evidence was evidence that they related to the plaintiff.  The jury were justified, from the contents of the record and of the yellow paper, and from the fact that the yellow paper and the first two lines of the white card were written by the same hand, in finding that the white card also referred to the plaintiff.

This brings us to the exceptions taken by the Union Freight Railroad Company.

8.  The difficulty with the argument in support of the exception to the refusal of the judge to direct a verdict for the Union Freight Railroad Company is that although there was no evidence directly contradicting the account of the accident given by their witnesses, the jury had a right to disbelieve their testimony *in toto*.  *Twombly* v. *Monroe*, 136 Mass. 464.  *Commonwealth* v. *Hyland*, 155 Mass. 7.  *Commonwealth* v. *McNeese*, 156 Mass. 231.  *Merchants' National Bank* v. *Haverhill Iron Works*, 159 Mass. 158.  *Devine* v. *Murphy*, 168 Mass. 249.  *Raymond* v. *Worcester*, 172 Mass. 205.  *Hankinson* v. *Lynn Gas & Electric Co.* 175 Mass. 271.  *Barker* v. *Loring*, 177 Mass. 389, 390.  *Palmer* v. *Coyle*, 187 Mass. 136.  *Mercantile Guaranty Co.* v. *Hilton*, 191 Mass. 141.  *Hamilton* v. *Taylor*, 195 Mass. 68, 71.  To the same effect see *Fulton* v. *Andrew*, L. R. 7 H. L. 448, 457.  The plaintiffs' evidence which has been stated warranted a finding that the engineer of the engine of the Union Freight

train ought to have seen the car in which the plaintiffs were passengers and stopped before reaching the junction of the two tracks.

9. The only objection taken to the introduction in evidence of the rules was that the superintendent who produced them testified that some of them had been orally modified, and that they were in force except so far as they were orally modified. Counsel for this defendant stated : " What was in force at that time which was violated or had any bearing upon this accident I certainly should not object to, but it must certainly apply to this time, to this place, and to these circumstances, before I think they are competent." In other words, the defendant's counsel recognized the rule laid down in *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476, and contended that the evidence offered was not brought within it. The same witnesses testified that " The employees are supposed to have these rules furnished to them. It is the duty of our train master to see that the employees running a train on the Union Freight road are furnished with a copy of these rules." Also that " these rules that are before me apply to the Union Freight Railroad."

This warranted a jury in finding that there were no oral modifications of these rules, or at any rate none that had been put in force. The admissibility of all the rules admitted in evidence was dealt with *en bloc*. If it is now open to the defendant to urge that some of those admitted had no bearing on the issues then being tried, they were immaterial and the defendant was not harmed by their being put in evidence.

*Exceptions overruled.*