### R. T. ADAMS COMPANY *vs.* A. M. ISRAEL.

Suffolk.     January 8, 1923. — February 28, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Agency,* Scope of authority.  *Payment.*

At the trial of an action for $800 upon an account annexed for flooring laid in a building in Springfield by a corporation having a principal place of business in Boston, there was evidence tending to show that the corporation maintained a branch office in Springfield in charge of a man to whom it furnished for his use as manager cards bearing the manager's name as such; that at the time the account in suit was contracted the manager had been employed for three years, making contracts on behalf of the corporation and quoting prices; that he was

employed to obtain orders, hire men and inspect the work; that he would advance moneys and send a statement to the Boston office of the amount due, which would be returned to him in the check sent for the payroll; that he had no instructions to collect any bills, although in some instances he might have done so; that after the contract in question was fully performed, the manager interviewed the defendant, asked him for a payment by a check to his personal order, represented that he collected the accounts, received from the defendant a check for $300 and gave the defendant a paper showing the date, the defendant's name, the amount of the contract, the $300 received, and the balance due of $500, the receipt being stamped with the plaintiff's business name "by" the individual name of the manager; that thereafter the defendant gave to the manager three checks, the total amount of the balance of the contract price, each payable to the manager's individual name; that the checks were collected by the payee; that the defendant saw a sign on the Springfield office of the plaintiff bearing the name of the manager and his title as such. There was no evidence that the defendant had any knowledge of a limitation of the manager's authority. *Held*, that

(1) It could not properly be ruled that the manager was not authorized as the plaintiff's agent to collect the amount due from the defendant;

(2) It was a question for the jury whether, from the plaintiff's employment of the manager and the placing of him in control of the office with the powers given him, the public properly might understand that he had authority to collect payments due on contracts, in the absence of knowledge of any limitation upon the extent of his authority in this respect;

(3) The circumstance, that the payments were by checks payable to the order of the manager in his personal name, while it was to be considered by the jury, was not conclusive against the defendant;

(4) The evidence warranted a finding that the manager had authority to receive payments either in cash or by check payable directly to himself;

(5) Conversations between the defendant and the manager and the checks given by the defendant to the manager were competent evidence;

(6) Testimony of the plaintiff's president that he never notified the defendant that the manager did not have authority to collect money, and that checks should be payable to the plaintiff, was admissible.

CONTRACT for $800 upon an account annexed for "flooring at No. 32 Church Street, Springfield." Writ dated December 10, 1920.

In the Superior Court, the action was tried before *Dubuque*, J. Subject to an exception by the plaintiff, the defendant testified in direct examination that on May 26, 1920, he received an order slip from one Carnes showing the date and name of A. M. Israel, 32 Church Street, "floors as agreed, $800, received $300, balance due $500," with a stamp R. T. Adams, Hardwood floors, 169 Spring Street, Springfield, Mass. by M. A. Carnes; that on that day Carnes asked witness how he liked the floors, and said, "Now I would like to have some money;" that witness said that he had not as yet got a bill and Carnes replied, "You are going to get

the bill by mail." "And then he asked me how much money I am going to give him today? 'Well,' I says, 'I can give you $300.'. 'Well,' he says, 'give me $300 today and in a day or two you are going to get a bill by mail.' I took out my checkbook and I was ready to write a check. 'Well,' he told me, 'make out to me,' — that is . . . M. A. Carnes. I says, 'Why do you want it made out in your name?' He says, 'All the money from Springfield, it is made,—I am the one who collects, and I am the one who got to pay out the bills, and you got to pay the money to me, and you will get a bill in day or two; you will get it from Boston.' I said, 'I want to have something for the $300 — what do I have to show for the $300 I give you now?' He took out a book from his pocket and says, 'Now, I am going to give you a receipt I made out the check for $300,' and he gave me a statement, and he took off the $300 and that makes $500." That check for $300 and later checks in amounts equaling in all $500, signed by the defendant and payable to M. A. Carnes, were admitted in evidence subject to exceptions by the plaintiff. The checks had been collected by the payee.

There was no evidence that the defendant had any notice of a limitation of the authority of Carnes. Other material evidence is described in the opinion.

At the close of the evidence, the plaintiff asked, among others, for the following rulings:

"1. Upon all the evidence the plaintiff is entitled to recover on its declaration."

"3. Making out a check payable to the order of an employee of the plaintiff is not payment to the plaintiff.

"4. There is no evidence that the plaintiff either by acquiescence or negligence, or by reason of the nature of the duties intrusted to Carnes, and the situation in which the plaintiff put him, has created any circumstances which warranted the defendant in the exercise of a reasonable prudence and discretion in making out a check payable to the order of Carnes, in payment of the debt due the plaintiff.

"5. It is not within the apparent scope of Carnes' authority to request payment to be made to him by means of a check made payable to Carnes' order individually.

"6. There is no evidence that Carnes was in fact authorized by the plaintiff to make collections generally.

"7. There is no evidence that Carnes was in fact authorized to collect from this defendant.

"8. If the jury find as a fact that Exhibit 4 had been altered by any person without authority from the plaintiff before the defendant received it, no inference from its final appearance can be drawn against the plaintiff as to knowledge on the part of the plaintiff of any payments made by the defendant to Carnes.

"9. Where the existence of the plaintiff was known to the defendant before any payment was made by the defendant, there was no obligation on the part of the plaintiff to notify the defendant not to make out any checks in payment of the bill due the plaintiff, except to the order of the plaintiff."

The above rulings were refused. The plaintiff excepted to such refusal and to portions of the charge to the jury which in substance left to the jury to determine whether the acts of Carnes in receiving payments on the account between the plaintiff and the defendant were within the scope of his authority. The jury found for the defendant; and the plaintiff alleged exceptions.

*H. Bergson,* for the plaintiff.

*H. A. Eyges,* for the defendant.

CROSBY, J. This is an action of contract to recover for labor performed and materials furnished in laying hard wood floors in the house of the defendant. There was evidence that the principal office of the plaintiff corporation was in Boston; that in May, 1920, it maintained a branch office in Springfield in this Commonwealth, in charge of one Carnes; that the plaintiff furnished Carnes, for his use as manager of the office, cards upon which appeared the name of the company, its address and "M. A. Carnes, Springfield, Manager;" that he had been employed as manager since the time the Springfield office was opened in 1917; that he made contracts on behalf of the plaintiff and quoted prices to customers; that he was employed to obtain orders, hire men and inspect the work; that he would advance moneys and send a statement to the Boston office of the amount due, which would be returned to him in the check sent for the payroll; that he had no instructions to collect any bills. The plaintiff's president and treasurer testified that there might have been some instances in which Carnes collected money from customers, but that that fact would not neces-

sarily attract his attention so long as the money was properly turned in.

There also was evidence that under the contract the defendant agreed to pay $800 for the labor and materials furnished thereunder; that the floors were laid in May, 1920; that on the twenty-sixth day of that month the defendant gave a check for $300 payable to Carnes, at his request and on his representation that he collected the accounts, and received from him a paper showing the date, the defendant's name, the amount of the contract, the $300 received, and the balance due of $500, and stamped "R. T. Adams, Hardwood floors . . . by M. A. Carnes." The defendant afterwards gave the following checks, payable to Carnes: July 6, $300, July 23, $100, August 23, $100. There was evidence that Carnes absconded and did not turn over the amounts so collected. The defendant testified that he saw a sign on the Springfield office of the plaintiff as follows: "R. T. Adams Company, Hardwood floors, Carnes, Manager." The question is, was there any evidence warranting a finding that Carnes was authorized to receive the payments made to him by the defendant.

Upon the evidence above recited it could not properly have been ruled that Carnes was not authorized as the plaintiff's agent to collect the amount due from the defendant. The plaintiff held out Carnes as its manager to transact its business in Springfield; and in view of the nature of that business, and all the circumstances known to the plaintiff, it was a question for the jury whether its employment of the agent, and the placing of him in control of the office with the powers given him, the public might properly understand that he had authority to collect payments due on contracts, in the absence of knowledge of any limitation upon the extent of his authority in this respect. *Brooks* v. *Shaw,* 197 Mass. 376. *Cauman* v. *American Credit Indemnity Co. of New York,* 229 Mass. 278, 283. *Danforth* v. *Chandler,* 237 Mass. 518. The circumstance that the amounts paid were by checks payable to the order of the agent is not decisive; but was to be considered by the jury in connection with all the other evidence including the nature of the business; it was for them to decide whether Carnes was authorized to receive payments, and, if so, whether they could be made by checks payable to himself. If he were found to be authorized to receive on behalf of the plaintiff the amount due, it also could

be found that he might do so either in cash or by check payable directly to himself. The case at bar is distinguishable from those where goods are sold by an agent who merely solicits orders without any authority to receive payment therefor. In those circumstances the principal is not bound by payment to the agent. *Clough* v. *Whitcomb*, 105 Mass. 482. *Clark* v. *Murphy*, 164 Mass. 490. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, and cases cited. *Kaye* v. *Brett*, 5 Exch. 269.

The conversations between the defendant and the agent, and the checks given the latter, were competent; the testimony of the plaintiff's president that he never notified the defendant that Carnes did not have authority to collect money, and that checks should be payable to the plaintiff, was also admissible. The exceptions to the admission of evidence must be overruled.

The burden of proof rested upon the defendant to show he made payments to one authorized to receive them, and the judge so instructed the jury. The rulings requested could not properly have been given in view of the conclusion reached. The instructions to the jury adequately covered the issues presented.

*Exceptions overruled.*