## JOSEPH E. WARNER *vs.* ALVAN T. FULLER.

Bristol.   January 17, 1923. — June 5, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & CARROLL, JJ.

*Libel and Slander,* Truth as a defence.   *Evidence,* Admissions, Presumptions and burden of proof.

In an action for the publication of a libel and slander, a defence relied on was that the published statements were true. It appeared that the alleged slanderous and libellous publications occurred during a pre-primary campaign, when the plaintiff and the defendant, members of the same political party, were contending for the party nomination for the office of Lieutenant Governor, and were to the effect that, while Speaker of the House of Representatives, the plaintiff also had been in partnership with an attorney at law who had appeared before legislative committees appointed by the plaintiff in opposition to legislation unfavorable to the business interests of their clients and that the money received for such services belonged to the partnership and was to be divided between its members. *Held,* that such statements constituted actionable defamation.

At the trial of the action above described, there was contradictory evidence relating to an office sign bearing the names of the plaintiff and of the attorney joined in the form of a firm name, to the method of conducting the business in offices shared by the plaintiff and the attorney at law, to a statement by the plaintiff to his college classmates at their decennial reunion, to the circumstances of the settlement by the plaintiff of an action carried on under the firm name, to a conversation of the plaintiff with a client to the effect that he should not represent such client while the attorney was representing his opponent, to the introduction by the plaintiff of the attorney to general counsel for a large group of manufacturers, who subsequently employed the attorney to represent the group in legislative matters for which a substantial fee was paid to the attorney, and to the silence of the plaintiff at a political meeting at which the defendant asked the plaintiff relating to the truth of the charges and he and members of the audience urged the plaintiff to reply. *Held,* that

(1) There was evidence which would justify a finding by the jury that the partnership between the plaintiff and the attorney existed;

(2) If the jury so found, a further finding was warranted that the money received for services was partnership money in which the plaintiff was entitled to share even if the basis of participation did not appear;

(3) The trial judge was not warranted in ruling that there was "no evidence sufficient" to warrant the jury in finding that the defence of justification had been maintained.

Where a definite statement of an alleged fact is made in the presence and hearing of a party, which affects him personally in his rights and is of such a nature as to call for a reply, and the party addressed has knowledge of

the matter to which reference is made which enables him to answer if he
is inclined to make reply and the circumstances are such as to make a reply
proper and natural, the statement, taken in connection with an entire or
even partial failure of response, is evidence to be considered as tending to
show a concession of the truth of the facts stated.

The practice in the courts of this Commonwealth and generally requires a
submission of an issue of fact to the jury if there is evidence proper for their
consideration even though the preponderance may appear so great to the
trial judge as to require him (if requested) to set aside one or several ver-
dicts rendered against such preponderance.

TORT, with a declaration in six counts, the first count
alleging slander and the last five alleging libel.  Writ dated
October 25, 1920.

In the Superior Court, the action was tried before N. P.
Brown, J.  Material evidence, exceptions saved by the de-
fendant, and the basis of a report of the action by the trial
judge to this court are described in the opinion.

J. W. Cummings, (J. Wiggin & J. B. Cummings with him,)
for the defendant.

J. L. Hall, (A. MacLeish & D. Kimball with him,) for the
plaintiff.

BRALEY, J.  The plaintiff, a member of the bar and of the
House of Representatives of the General Court, of which
he had been elected Speaker, and the defendant, of the same
political party, were candidates for nomination for the office
of Lieutenant Governor.  During the campaign the defendant
orally and in writing and in print publicly charged the plain-
tiff with being a partner in the practice of law with Harold
F. Hathaway, Esquire, under the name of Hathaway and
Warner, and that while he held the office of Speaker his
partner, with the plaintiff's knowledge and assent, appeared
before and was heard in behalf of clients, who were opposed
to the enactment of certain proposed legislation which it
was contended materially affected their business interests,
by legislative committees appointed by the Speaker, and that
the money received for such services belonged to the partner-
ship and was to be divided between its members.  The
declaration as amended contains one count for slander, and
five counts for libel.  While there are allegations that the
defendant also had generally referred to the plaintiff as un-

fitted for the office to which he aspired, the substance of the complaint in each count, when read with the specifications afterwards furnished by order of the court on the plaintiff's request, is the statements just referred to, that the plaintiff has used his office for private gain, which were repeated and published with immaterial variations as the contest grew more intense and embittered. The answer, after a general denial, averred that the language was privileged, that it was true, and that it was published without malice.

The action after a protracted trial was submitted to the jury on all the counts, who after prolonged deliberation having failed to agree, the judge gave the following instructions: " I now rule as requested by the defendant that the plaintiff has not proved any actionable slander or libel in any of the several counts of his declaration unless in the allegation that the defendant charged him specifically with dividing the fees received by Mr. Hathaway for appearing before legislative committees appointed by the plaintiff as Speaker of the House of Representatives. As to that charge I now rule as requested by the plaintiff that its obvious import was to impair the influence and effectiveness of the plaintiff as speaker and to disgrace him in that position and to charge him with misconduct therein and therefore slanderous and libelous. I further rule as I did yesterday that there is no evidence sufficient to justify you in finding that the defendant has established the truth of this charge. I further rule that it is a libelous and slanderous statement of fact and not within the privilege of fair comment. The only other principle of law involved is the effect of any reasonable suspicion which the defendant may have had from the plaintiff's conduct that the charge was true. This principle of law is material only for the purpose of mitigating damages, as the materiality of malice is eliminated by these rulings. I therefore direct you to return a verdict for the plaintiff for $1, and reserve this case for report to the Supreme Judicial Court upon the stipulation upon the part of the plaintiff that if I have committed legal error in directing this verdict a judgment shall be entered in that court for the defendant." The defendant excepted to the ruling, and the case is here on

his exceptions as well as on the report of the judge, which are in accord on all material questions presented by the entire record and argued by counsel.

The defendant, a witness at the trial, having admitted that he made the statements as alleged in all the counts, and having taken the position that not only were they privileged but were true, the judge correctly ruled that so much of the declaration as charged the plaintiff with misconduct and want of integrity in his official capacity was actionable defamation. *Shattuck* v. *Allen,* 4 Gray, 540, 545.   *Loker* v. *Campbell,* 163 Mass. 242.   *Sillars* v. *Collier,* 151 Mass. 50.   *Twombly* v. *Monroe,* 136 Mass. 464.   *Fay* v. *Harrington,* 176 Mass. 270, 273.   *Craig* v. *Proctor,* 229 Mass. 339.   *Wofford* v. *Meeks,* 129 Ala. 349.   *Stow* v. *Converse,* 3 Conn. 325.   *Coffin* v. *Brown,* 94 Md. 190.   *Bourreseau* v. *Detroit Evening Journal,* 63 Mich. 425.   *Maynard* v. *Beardsley,* 7 Wend. 560. It is provided however in R. L. c. 173, § 91, now G. L. c. 231, § 92, that in an action of libel, the truth, if established, is a justification unless actual malice is proved.   *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 351, 352.   And in an action for slander the truth if proved is also a justification.   *Clark* v. *Munsell,* 6 Met. 373.   *Golderman* v. *Stearns,* 7 Gray, 181.   *True* v. *Plumley,* 36 Maine, 466.   The defendant had asked for a directed verdict on each count which was refused, but the judge finally ruled that there was, " no evidence sufficient " which would warrant the jury in finding that the defence of justification had been maintained.   The usual rules governing the admissibility of evidence permitted the introduction of all the facts and circumstances bearing on the charges which tended to establish their truth.   *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238.   A review of the material evidence to the admission of which no exceptions appear to have been taken by either party is therefore necessary. *Harding* v. *Brooks,* 5 Pick. 244, 248.   *Stone* v. *Crocker,* 24 Pick. 81.   *Gunnison* v. *Langley,* 3 Allen, 337.   *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472, 476.

The plaintiff, testifying in his own behalf, explicitly denied that he had ever been in partnership with Hathaway.   But

on the evidence introduced by the defendant, and the evidence of the plaintiff elicited in direct and cross-examination, the jury would have been warranted in finding these facts. The plaintiff after his admission to the bar in 1909, went into the office of Hathaway, and with his knowledge a sign was hung on the outside of the building which read " Hathaway and Warner, Attorneys at Law," where it remained for many years. In his address to his college class in 1916 the decennial year of their graduation he stated that he had been associated with him in the general practice of law from the time of his admission to the date of the address, and that Hathaway was still his associate. The plaintiff further testified, " that in the years 1910 and 1911 he received as compensation $5 a week, and in 1912 $10 a week; that since then he had not received any money from Mr. Hathaway except two months' wages in 1913; and in 1912 and 1913 " and in 1914, " he did considerable work; that in 1914 attended the cases in the district court, probably doing all the trial work in the district court, that he tried some cases in the Superior Court, and sat in with Mr. Hathaway in the trial of those cases, and made investigations and prepared the law for him." But in 1915 " he did less, and from that time on very little, if anything." It also appeared from his evidence that he indorsed the name of Hathaway and Warner on writs issued from the office, and on appearances for defendants, and although he had been practicing law during eleven years when the defendant made the charges in 1920, he kept no docket of his own or record of any cases in which he was engaged, nor any cash or check book showing moneys received from clients or collected for, and paid to them, and that during the entire period he had no recollection of even having collected any money for clients. It could be found even if denied by the plaintiff, that in a suit brought by Hathaway he appeared as counsel, and a settlement having been effected directed that the check should be made payable to Hathaway and Warner, and when paid it was indorsed Hathaway and Warner, and the agreement for judgment was signed " Joseph E. Warner, attorney for the plaintiff."

The conversation in July, 1920, with a witness, a lawyer, who said to the plaintiff, " I know your partner Mr. Hathaway. I had a law case, a will case with your firm," and the plaintiff having asked for the name of the case said that he did not recall it; " that he had not kept in as close touch with the cases in the office as he wished he might have owing to his duties at the State House," as well as the evidence of a witness who went to the office to consult the plaintiff and after some preliminary talk said to him, " Mr. Warner, if you are not going to be her attorney, and Mr. Hathaway is going to be her attorney, it is not safe to trust my story to you, as you being a partner of Hathaway's," to which the plaintiff replied, " No, that is right," were to be considered in connection with the sign, the plaintiff's statements in his address, and his professional use of the name of Hathaway and Warner. The credibility of the witnesses and the natural inferences to be deduced from their testimony were matters of fact, and it cannot be assumed as matter of law that there was no evidence which would justify a finding that when the plaintiff became Speaker a partnership existed not merely as to those who may have consulted either the plaintiff or Mr. Hathaway as ostensible partners, but as between themselves. *Charman* v. *Henshaw,* 15 Gray, 293, 295. *Gunnison* v. *Langley,* 3 Allen, 337. *Bartlett* v. *Raymond,* 139 Mass. 275. *Barry* v. *Boston & Albany Railroad,* 172 Mass. 109. *Sumner* v. *Gardiner,* 184 Mass. 433, 436. *Young* v. *Hayes,* 212 Mass. 525. *Wheelock* v. *Zevitas,* 229 Mass. 167, 170. *Lindsay* v. *Swift,* 230 Mass. 407, 411, 412. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111. *R. T. Adams Co.* v. *Israel,* 244 Mass. 139.

The plaintiff was not precluded because of his office from continuing in practice either by himself or with Mr. Hathaway, and the next inquiry is whether Hathaway appeared before the legislative committee on his own personal retainer or whether he acted for the firm. We again recur to the record. The plaintiff's witness, William J. Garcelon, Esquire, testified that he was an attorney at law with an office in Boston and for ten years had been the representative of the

Arkwright Club an organization composed of the presidents, treasurers, assistant treasurers, " and men in similar positions in New England cotton mills," and had general supervision of the activities of the club, which included " legislative matters both at Washington and at the State House in Boston; that he did not go very often on behalf of the . . . club but engaged other lawyers to do that."

The witness also " had charge of traffic matters for the cotton manufacturers, collected claims for lost cotton, gave advice to the cotton mills with reference to the routing of traffic, and the rating of freight, and many other matters relating to traffic." In response to a request from the plaintiff received by telephone between the fifteenth and twentieth of February, 1920, asking for an interview, the plaintiff accompanied by Hathaway came to his office, and after introducing Mr. Hathaway he remained a few minutes and then left. A conversation followed with Hathaway the details of which the witness did not recall. A few days later after some inquiries and interviews with members of the " Fall River Cotton Manufacturers Association who had frequently referred legislative matters to . . . [him] . . . he later engaged Mr. Hathaway for that organization to appear in advocacy of a bill to postpone the operation of a law relating to continuation schools, which had passed the year before, " and by a check payable to his order Hathaway received $531.83 for services. The plaintiff while stating that this was the only instance he could remember during his official incumbency where he had gone to the office of a lawyer to introduce to him any other lawyer, also said, that the introduction was solely at Hathaway's request, and that he may have used the words " my associate." He further testified, " that Mr. Hathaway is still his law associate, and was his law associate in 1920, and was his law associate when he went to see Mr. Garcelon with him." And that when he heard shortly after, that. Mr. Hathaway had been employed by the Fall River manufacturers he made no further inquiries as to Mr. Hathaway's employment and that he had no knowledge or information of the general employment of Mr. Garcelon or the scope of

his activities, and that he never took any money. But the evidentiary value and effect of this explanation and positive denial were to be considered with the plaintiff's statement that Hathaway at the time "was his law associate." *Lindenbaum* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 314.

The jury also had before them the evidence of the officer presiding at a rally where each of the parties from the same platform presented his cause and solicited votes. The defendant was the first speaker, and he was immediately followed by the plaintiff. If the jury believed this witness they could find " that the defendant stated that he had questions he wished to ask the plaintiff, and turned directly to the plaintiff and said ' Will you deny that Harold P. Hathaway, I believe that is it, is not your law partner? Will you deny that Mr. Hathaway did not represent you, did not represent the Fall River Cotton Manufacturers at a hearing at the State House? Will you deny that you did not share fees with Mr. Hathaway? Will you deny that the recess committee was wasteless [*sic*] a needless waste of the State's funds? . . . Will you deny that you are Speaker of the House? Do you deny that as speaker you appointed committees of the house? . . . The plaintiff did not answer any of those questions while the defendant was talking . . . , the witness introduced the plaintiff who came to the front of the platform and asked if Mr. Fuller had any more questions; . . . and did not answer any of the defendant's questions during his speech; that there were a number of cries from the audience for the plaintiff ' to answer up '; ' Why don't you answer his questions, Mr. Warner? '; and questions of that nature; that the plaintiff " made no response except to say, " Any fool knows the speaker of the House has the appointment of the committees." Another witness present at the meeting gave this account. " The defendant turned to the plaintiff and asked him whether or not he was a law partner of Mr. Hathaway; whether or not as Speaker of the House he didn't know that Mr. Hathaway was to appear before a committee which he had appointed; whether Mr. Hathaway did not share in fees

which he received as a result of services before such a committee; whether he did not occupy in Taunton an office with Mr. Hathaway; that the defendant faced the plaintiff when he asked the questions, and turned around after each question and back again; that the plaintiff made no answer to the defendant's questions, either while the defendant was speaking or after he left the platform; that she heard the audience cry out, ' Answer him, Warner. Why don't you deny them, Warner? '; that Mr. Warner made no answer of denial; that the defendant in asking his questions said to the plaintiff ' If you will deny them I will retire from the campaign and support you for lieutenant governor.' " There was evidence from other spectators one of whom testified that among other things the defendant said, " If you will present me with an affidavit that you did not receive a portion of the fee that Mr. Hathaway received for that service I will withdraw from this contest and give you my support," to which no reply was made. It is unnecessary to quote further evidence tending to corroborate in different ways what has been previously stated. It is well settled in the law of evidence " that where a definite statement of an alleged fact is made in the presence and hearing of a party which affects him personally in his rights, and is of such a nature as to call for a reply, and the party addressed has knowledge of the matter to which reference is made which enables him to answer if he is inclined to make reply, and the circumstances are such as to make a reply proper and natural, the statement taken in connection with a total or even partial failure of response, is admissible in evidence as tending to show a concession of the truth of the facts stated." *Commonwealth* v. *Kenney,* 12 Met. 235, 237. *Boston & Worcester Railroad* v. *Dana,* 1 Gray, 83. *Hildreth* v. *Martin,* 3 Allen, 371. *Mallen* v. *Boynton,* 132 Mass. 443. *Proctor* v. *Old Colony Railroad,* 154 Mass. 251. *Sturtevant* v. *Wallack,* 141 Mass. 119, 123. *Sumner* v. *Gardiner,* 184 Mass. 433, 436. *Wiedemann* v. *Walpole,* 2 Q. B. [1891] 534, 539. Wigmore on Ev. § 1071. We have said that no exceptions were taken to the admission of evidence, and the questions whether under the circumstances the defend-

ant's inquiries if they were not true should have been denied by the plaintiff, and whether in the absence of a denial his silence should be held to be an admission of the truth of the statements, were for the consideration of the jury under proper instructions. *Hildreth* v. *Martin*, 3 Allen, 371. *Hayes* v. *Kelley*, 116 Mass. 300, 301, 302. *Commonwealth* v. *Brown*, 121 Mass. 69, 80, 81. *Proctor* v. *Old Colony Railroad*, 154 Mass. 251, 253. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 576. The cases of *Whitney* v. *Houghton*, 127 Mass. 527, *Commonwealth* v. *Densmore*, 12 Allen, 535, and kindred cases do not support the plaintiff's contention that on the present record as matter of law the plaintiff's conduct had no probative value on the issue of justification.

It is unnecessary to review other evidence more or less cumulative in character which tends to support the respective contentions of the parties. While the defendant does not argue that Hathaway could not be lawfully retained personally and independently of his partnership relations, and paid for his services, it is urged by counsel for the plaintiff that the evidence conclusively shows that he acted for himself and not for the partnership. But the weight of the evidence is not to be considered. The jury could compare the testimony of different witnesses and accept a part or reject a part. *Springfield* v. *Boyle*, 164 Mass. 591, 603. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314. *Hilden* v. *Naylor*, 223 Mass. 290, 292. "The practice in this Commonwealth and generally requires a submission to the jury if there is evidence proper for their consideration, even though the preponderance may appear so great to the trial judge as to require him (if requested) to set aside one or several verdicts rendered against such preponderance." *Niland* v. *Boston Elevated Railway*, 208 Mass. 476, 478, and cases there collected. The jury in their consideration of the entire evidence were to judge of the meaning of language as used by the witnesses, and could use and apply their knowledge of human nature and experience in commercial affairs and transactions of everyday life. *Parke* v. *Boston*, 15 Pick. 198, 209. *Murdock* v. *Sumner*, 22 Pick. 156. *Bradford* v. *Cunard Steamship*

*Co.* 147 Mass. 55, 56.   See *Sullivan's Case,* 241 Mass. 9. If they found that a partnership as between themselves had been proved, no evidence of its dissolution appeared, and they could further find that it was in existence when the plaintiff and Hathaway went to Garcelon's office.   Nor were they bound to accept as true the outward form of what occurred at the interview, nor the plaintiff's assertion that his only purpose in arranging for the meeting was to introduce Hathaway, and that he was ignorant of any reason why Hathaway desired to meet Garcelon.   *Lindenbaum* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 314. It is rarely that it can be ruled as matter of law that the burden of proof resting on competent oral testimony has not been sustained.   The jury, who could draw inferences of fact from all the circumstances appearing in evidence, and not the court, were to determine whether the partnership, or Hathaway individually had been employed.   *Hubbard* v. *Allyn,* 200 Mass. 166. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452, 454.   See *Fernald's Case,* 240 Mass. 567, 570.   If satisfied that it was the partnership, they also would have been justified in finding that the money received for services was partnership money in which the plaintiff was entitled to share even if the basis of participation did not appear.   *Meehan* v. *Valentine,* 145 U. S. 611. *Karrick* v. *Hannaman,* 168 U. S. 328, 334.

The exceptions must be sustained, and in accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*