JAMES DRONEY vs. JOHN F. DOHERTY & another.

THOMAS BRIGGS vs. SAME.

Middlesex.    March 2, 1904. — June 23, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.    *Evidence*, Remoteness.

In an action by a workman in an iron foundry against his employer for injuries from the fall of a freight elevator on which he was standing, after the plaintiff has shown that the clutches of the elevator were defective and practically useless, he may show by the testimony of experts, who made an examination of the elevator the day after its fall, that there were defects in the car and in the uprights, and that either the car would not have fallen had the clutches been in working order, or that one of the uprights was sprung so that the clutches could not catch on it, there being nothing to show that any change had occurred between the time of the accident and the examination of the elevator by the experts.

It is evidence of a failure in duty on the part of the proprietor of an iron foundry maintaining a freight elevator on which his workmen ascended and descended in going up with loads of iron to the furnace and returning for other loads, that the elevator car with workmen on it fell, either because the clutches of the elevator were out of order and failed to work or because the posts on which it ran were out of repair.

In actions by two workmen in an iron foundry against their employer for injuries from the fall of a freight elevator, it appeared, that the plaintiffs had taken up a load of iron to the furnace and stepped on the elevator car to descend.   On pulling the operating cord in the usual way the car instead of descending remained stationary.   One of the men, experienced in operating the elevator although he was ignorant of the method by which the power was applied, stepped off to ascertain whether the operating machinery was running and, finding that it was, went back to the car.   As he stepped upon its floor it fell.   The second man had remained in the car and did not know that the machinery was running until the first man told him so on his return, the announcement being practically simultaneous with the fall of the car.   *Held*, that the plaintiff who stepped off the car and returned to it incurred the danger voluntarily and could not recover, but that the plaintiff who remained in the car could be found to have been in the exercise of due care.

TWO ACTIONS OF TORT by workmen in the defendants' iron foundry in Lowell for injuries from the fall of a freight elevator on which the plaintiffs were standing.    Writs dated July 9, 1902.

In the Superior Court the cases were tried together before *Aiken*, J.    The judge refused in each case to order a verdict for

the defendants and submitted the cases to the jury. The jury returned a verdict for the plaintiff in each case, in the sum of $165 for Droney and in the sum of $1,375 for Briggs. The defendants alleged exceptions in both cases.

*W. L. Harris*, for the defendants.

*F. W. Qua*, for the plaintiffs.

BRALEY, J. The defendants, among other appliances used by them in their business as iron founders, ran an elevator by electricity, to raise scrap iron from the level of the foundry yard to a platform over which it was wheeled to the door of a blast furnace. It ran in a well twelve feet in depth, was operated by means of a shipping cord, and stopped automatically, at the platform or at the yard, by stops placed upon the cord. For the purpose of preventing accidents, it was provided with safety clutches that were devised to catch in the rails or ratchets placed on the vertical posts or uprights of the frame, if for any reason the motive power failed to work properly.

At the time of the accident the plaintiffs had put the load of iron into the furnace and had stepped upon the car. One of them pulled the cord; but instead of descending in the usual way, the car remained stationary, and subsequently fell a distance of ten feet, causing the injuries to recover damages for which these suits are brought.

It became obligatory on the plaintiffs to show what caused the accident; and proof of its occurrence alone was not of itself sufficient to sustain a conclusion that it arose from the carelessness of the defendants, for after the duty which they owed to the plaintiffs to provide them with reasonably safe permanent appliances with which to do their work had been pointed out, the fact of negligence in its performance remained to be affirmatively proved, as the presumption was present that this duty had been performed until the contrary appeared. *Blanchette* v. *Border City Manuf. Co.* 143 Mass. 21. *Broult* v. *Hanson*, 158 Mass. 17. *Hofnauer* v. *R. H. White Co*, *ante*, 47.

For this purpose, they first showed by one of the servants of the defendants, who had operated the elevator and knew of its previous condition, that the clutches were defective and practically useless; and then they called two experts who had made an examination the day after its fall, who testified to defects

in the car and in the uprights, and one of them expressed an opinion that it would not have fallen if the clutches had been in working order, for they would have caught in the slots of the rack rail; while the other was of opinion that one of the uprights had sprung so that the clutches would not engage with the rail.

This evidence was admitted subject to the exception of the defendants that it was incompetent because its admission was not preceded by proof that no change had taken place in the meantime, and therefore it had no legitimate tendency to show the condition of the elevator at the time it fell.

The defendants, however, did not suggest that any change had occurred; and if such an examination could have been made immediately after the accident for the purpose of ascertaining its cause, and the result given in evidence, the intervening of one day between the event and the inspection by the experts, with the presumption that the condition of things remained the same, was sufficiently connected in time to permit the introduction of this testimony describing the structural features and state of repair of the elevator as they then appeared; and, taken in connection with the previous evidence, it all tended to show the situation existing at the time of the injury. *Cutter* v. *Hamlen*, 147 Mass. 471. *Tremblay* v. *Harnden*, 162 Mass. 383. *Laplante* v. *Warren Cotton Mills*, 165 Mass. 487.

The plaintiffs were not required, in order to make out a case, to go beyond proof of a defect; and if the car fell either because the clutches failed to work or the posts on which it ran were out of repair, this was sufficient, for it could be found that in the discharge of the duty they owed their servants the defendants could have discovered and remedied these defects, and their failure to do so was actionable negligence.

But the defendants strongly urge that there is no evidence of due care on the part of either plaintiff and for this reason they cannot prevail; and a recurrence to what happened at the time of. the accident becomes necessary.

Both plaintiffs were on the car ready to descend when the operating cord was pulled in the usual way, but the car instead of descending remained stationary. Droney then stepped off to ascertain whether the operating machinery was running, and

finding that it was he went back to the car, in which Briggs had remained, and as ne stepped upon the floor the car fell.

There is nothing in the evidence to indicate that Droney was other than a man of ordinary intelligence. For a year prior to this time he had used and operated the elevator nearly every day, although he had made no investigation of the machinery and was ignorant of the method by which the power was applied ; but he knew that the car did not move when he pulled the cord, and suspecting that something was wrong, he immediately went to see if the motive power had been stopped. Upon finding that the machinery was in motion, instead of remaining outside the car he voluntarily went back into it when he must have known that he had not reversed the shipping cord, and it was plainly apparent that the car was not working in the ordinary manner and was likely to descend at once.

The argument advanced in his behalf that he had a right to rely upon the clutches holding the car does not aid him, for if this occurred to him it only emphasizes his conduct in deliberately exposing himself to injury when he knew from the action of the elevator that probably it was out of order; and, if he chose to take the risk that it might fall, he was not in the exercise of due care and must abide by the result. *Murphy* v. *Webster*, 151 Mass. 121. *Degnan* v. *Jordan*, 164 Mass. 84.

This leaves for consideration the question whether the conduct of Briggs was such as to preclude his recovery. He knew all that Droney had done to start the car, and that it had proved ineffectual, but he did not know, until Droney told him, that the machinery was running ; and it cannot be said, as matter of law, that up to that time he was careless in remaining, for he might have been justified in believing that for some reason the power had been stopped.

An attempt was made on cross-examination to make it appear that after he was informed a sufficient time elapsed in which he could have left the car ; but in the light of all the evidence it fairly could be found that the announcement by Droney and the fall of the car were substantially simultaneous, and that no time was afforded him in which to realize and appreciate the danger, still less to deliberate how he should act to avoid it. For these. reasons it cannot be said that it was error to permit the jury

to determine this issue, and they have found that he was not negligent.

This disposes of all the questions raised by the defendants, and in the first case the exceptions must be sustained, while in the second they are overruled.

*So ordered.*