### JOHN F. HANNAN *vs.* AMERICAN STEEL AND WIRE COMPANY OF NEW JERSEY.

Worcester.   October 2, 1906. — October 17, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability.

In an action by an experienced workman in a wire factory against his employer, for personal injuries from the breaking of a bolt of a wire drawing machine on which he had worked for fourteen years previous to the accident the plaintiff testified that when rolling wire with the machine the wire sometimes would get twisted, and that when a kink came he had to step on the treadle of the machine to stop it, that, if the machine was not stopped and the kink got as far as the die, it was likely to injure the die so that repairs would be necessary, that on the day in question while he was working the machine he saw a kink coming toward the die, that he stepped on the treadle with one foot to stop the machine and, the treadle not going down, then got on with both feet, using all the strength he possessed to put down the treadle, but that the bolt which attached the treadle to the leaders broke and he came down on both heels on the floor, sustaining the injuries sued for. There was no evidence as to when the bolt was put in the machine or whether it ever had been inspected, and there was evidence that there was an old flaw at the point of breakage, one part of the break looking fresh and another part rusty. There was conflicting evidence as to whether the flaw or rusty part was visible on the surface of the bolt before the break. *Held,* that the questions of the due care of the plaintiff and of the negligence of the defendant were for the jury.

TORT by a workman for personal injuries incurred while working in the wire factory of the defendant at Worcester, caused by the breaking of a bolt in a wire drawing machine which the plaintiff was operating, with counts both under the employers' liability act and at common law, alleging respectively a defect in the ways, works or machinery of the defendant, negligence of a superintendent and defective appliances. On motion of the defendant the plaintiff afterwards filed a bill of particulars alleging that the defect mentioned in his first and third counts consisted of a defective bolt to which was attached a lever or treadle of the machine operated by the plaintiff. Writ dated June 3, 1905.

At the trial in the Superior Court *Pierce,* J. at the close of the plaintiff's evidence ruled that there was no evidence on

which the plaintiff could recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. W. Sheehan*, for the plaintiff.

*F. F. Dresser* for the defendant.

HAMMOND, J.   The plaintiff, who was an experienced workman and had worked on this machine fourteen years, testified that "in rolling when wire is rolled hot, the wire gets twisted sometimes, and then sometimes a kink comes in the wire and I have to step on the treadle to stop the machine. If I do not stop the machine, . . . the kink would go as far as the die, and when it gets to the die of course will break and won't go through, and sometimes it will injure the die" so that repairs have to be made.   As to the circumstances of the accident he testified as follows: " This kink was coming towards the die and I . . . [saw] . . . the wire coming off the reel, and I stepped on the treadle to stop the machine. . . . To save the wire, I stepped on the treadle of the machine to stop the machine, and I got on both feet using all the exertion I was possessed of to put down the treadle, but the treadle usually went down like a spring-board, but this time the bolt which attached the treadle to the leaders broke, and I came on both heels on the floor. . . . I came down on the floor unexpectedly, using all the exertion I could to stop the machine."   On cross-examination he testified, " I stepped on the treadle first with one foot and then brought up the other and stepped on it.   I had to put on one foot before I could put on the other.   I then had to jump up and down to force it down.   I weigh probably a hundred and fifty-five pounds.   While I was jumping the treadle broke."

It is argued by the defendant that the plaintiff was careless in subjecting the treadle to such a violent and unusual strain as he describes.   But there was a necessity for stopping the machine, and we cannot say as matter of law that the plaintiff used unusual or unreasonable force in his attempt.   This question was for the jury.

The difficult question is whether there was evidence enough to warrant a finding of negligence on the part of the defendant. In view of the use for which the bolt was intended, the fact that it broke in the manner described (provided the jury found that the plaintiff was using the machine in a reasonable way) was

evidence that it was defective and unsafe. The defendant was charged with the duty to exercise reasonable care to keep its machinery in a safe condition for use. The machine had been used fourteen years. There is no evidence as to when this bolt was put in, or whether it was ever inspected. There was evidence that there was an old flaw at the point of breakage, but as to the nature of the flaw the evidence was somewhat vague and conflicting. One Hickey, called by the plaintiff, testified that he "saw the ends that were broken. . . . The piece appeared to me a little flaw like, a bit rusty where it broke. . . . The rest appeared pretty fresh. One part looked fresh and one part looked rusty. About a quarter of an inch as near as I can figure it. Part of it looked fresh and part of it looked as though not a fresh break. The part that looked as though it was not a fresh break was the middle of the break. With reference to the circumference it was the middle of the bolt. Where it broke there was a piece that was rusty that was broken before. I could not very well tell where it was with regard to the outside circumference of the bolt." When asked whether this would come next to the surface or inside the surface he answered, " Inside of it," and when asked if it came to the surface he said, " Yes, it came up all right there, the rusty part. It extended a quarter of an inch from the surface."

One Burns, also called by the plaintiff, testified : " I could see of course that the bolt was kind of rusty where the break was, . . . what you would call a flaw. This was right where it broke. . . . I couldn't say with regard to the circumference of the end of the bolt whether it was in the surface or in from the surface. I couldn't say how deep it was. . . . Should say pretty close to it [the surface]." The " old and rusty piece " was " inside where the break was. You might say almost to the surface. You could see a rusty place." " Did not notice " " whether the rust extended to the surface."

The plaintiff testified on his first examination that a few minutes after the accident he showed the bolt to Watson the foreman and " called his attention to the flaw on both sides of the bolt," and, upon being recalled after the other witnesses had left the stand, said that the flaw was " located on the surface, extending from the surface in. . . . I should say about an

eighth of an inch . . . very nearly half [around the surface] . . . one third at least." The pieces of the broken bolt were shown to the jury but one of the pieces had been subjected to the action of fire since the accident, to such an extent as to change materially its shape and appearance.

Upon this branch of the defence the case is close, but in view of the testimony of the plaintiff and the appearance of the pieces of the broken bolt, we are of opinion that the questions whether the break was due to the defective condition of the bolt, and whether the defect might and should have been discovered by a proper inspection, were for the jury. See *Gould* v. *Boston Elevated Railway*, 191 Mass. 396; *Toy* v. *United States Cartridge Co.* 159 Mass. 313; *Murphy* v. *Marston Coal Co.* 183 Mass. 385.

*Exceptions sustained.*