James J. Cooney *vs.* Commonwealth Avenue Street Railway Company.

Middlesex.   January 9, 10, 1907. — June 18, 1907.

Present: Knowlton, C. J., Morton, Hammond, Loring, Braley, Sheldon, & Rugg, JJ.

*Negligence,* Employer's liability.   *Street Railway.*   *Practice, Civil,* Judge's charge, Exceptions.

In an action against a street railway company for personal injuries received while in the employ of the defendant by reason of the alleged incompetence of the motorman of the car on which the plaintiff was acting as conductor, it appeared that the motorman was employed later than the plaintiff, that it presently was rumored that he was incompetent, and that the defendant's assistant superintendent, whose duty required him to supervise the operation of the cars, became satisfied from his observation that this motorman never would be able to run a car properly, and so reported to the defendant's superintendent, that thereafter the motorman continued to be retained in the defendant's employ, that on the morning of the accident, the plaintiff, finding that he was to be put on a car with this motorman, asked for another motorman, and, this request being refused by the starter, asked to have another conductor put on the car in his place, that this request also was refused, and the plaintiff took his place on the car, that, owing to the blasting of rock for the construction of a sewer, boulders had been thrown upon a portion of the track on which this car was running, that the defendant's assistant superintendent directed the motorman and the plaintiff when they approached this place to change from the car which they were running to another car which was waiting for them on the other side of

the obstruction, that they made the change and proceeded to the end of the route, where they reversed their positions and started on the return trip, that, as they approached again the place of the obstruction, running on a straight track which did not appear to have been otherwise than in good condition, the motorman, instead of stopping the car, ran directly into a boulder on the track, causing the plaintiff's injuries. The mechanical and electrical appliances of the car were not shown to have been defective. *Held,* that there was evidence of the retention by the defendant of an unfit servant after notice of his incompetence and that the accident was caused by this servant's inefficiency; *also,* that it could not be held that as matter of law the plaintiff in starting on the car, after having protested against doing so with a general knowledge of the motorman's incompetence, assumed the risk of such a degree of incompetence and heedlessness on the part of the motorman as was shown by his wholly disregarding his orders and running the car into an obstruction plainly visible on the track, so that the case properly was submitted to the jury.

In an action against a street railway company for personal injuries received while the plaintiff was employed by the defendant as a conductor by reason of the alleged incompetence of the motorman of the car, who ran it against a boulder plainly visible on the track after having been ordered by the defendant's assistant superintendent to stop his car before he reached the obstruction, where there is evidence of the incompetence of the motorman and of the defendant's knowledge of his unfitness for his work, if the defendant is apprehensive that a certain portion of the charge of the presiding judge, which is correct in substance, may be understood by the jury to mean that they are to pass upon the question of the negligence of the motorman instead of passing upon the question of his incompetence, he should ask for more specific instructions, and, if he fails to do so, he afterwards, in arguing an exception to this portion of the charge, cannot complain because more specific instructions were not given.

TORT at common law for personal injuries received on June 18, 1902, while in the employ of the defendant from an accident caused by the alleged incompetence of one Mead, the motorman operating the car on which the plaintiff was acting as conductor. Writ dated July 24, 1905.

In the Superior Court the case was tried before *Hardy,* J. The substance of the evidence is described in the opinion. At the close of the evidence the defendant asked the judge to rule that the plaintiff was not entitled to recover and to direct a verdict for the defendant. This the judge refused to do. The defendant then asked the judge to rule as follows:

1. It appears from undisputed evidence that the plaintiff fully understood and appreciated any danger which arose from the incompetence of Mead and assumed the risk thereof by continuing to work with Mead, and the verdict therefore must be for the defendant.

2. If the jury finds from the evidence that Mead was an incompetent man and that the plaintiff knew him to be incompetent, but nevertheless, having such knowledge, continued to work on the same car with him, the plaintiff must be held to have assumed the risk of Mead's incompetency, and the verdict must be for the defendant.

3. It is immaterial what motive influenced the plaintiff in continuing to work with Mead after having knowledge of his incompetency. The fact that an employee fears discharge does not render him any less a free agent in assuming risks of which he has knowledge.

The judge refused to make any of these rulings, and gave other instructions to the jury. The portion of the charge relating to the subject of the defendant's third request, which is held to have been given in substance, was as follows :

" A second element is involved there. If you are satisfied upon all the evidence in the case that he [the plaintiff] was just as well aware of the incompetency of Mead as the employer, if you are satisfied that he had the same means of observation that the employer had, then it would be your duty to find that he did assume the risk in entering upon that car with Mead and in acting in company with him. The mere fact that he might have some fear that he might lose his place is not sufficient ; the mere fact that he might be told by Hickey [the starter] if he did not go upon that car and act as conductor, he would be discharged, would not be a sufficient answer ; if he saw fit, knowing all the circumstances, knowing the incompetency of Mead, — if you are satisfied that Mead was incompetent, — to do that without protest, then it would be your duty to say that he assumed the risk. But you have evidence here tending to show that he did .make some protest. Mead was not his regular motorman ; he was listed the night before with another motorman ; he was suddenly called upon this morning and was told that Mead was to be his motorman, and he protested ; that he was told of the emergency that he had to meet ; Sullivan [the assistant superintendent] was not there, and there was no one there to take his place. It is for you to say when he made that protest whether he voluntarily assumed the risk. Did he act in that matter with such a knowledge of the incompetency of Mead, if you find such incom-

petency, — of course I am not assuming that you find or instructing you to find that he was incompetent; that is a fact for you to pass upon hereafter, — did he have such knowledge that you can say that there was an obvious risk? Did he make a voluntary assumption of the risk? Consider all the circumstances and determine if, as a matter of fact and matter of law, there was an assumption of risk on his part. It is a question of fact that you are to decide, and I leave it to you."

Other portions of the charge are described in the opinion. The jury returned a verdict for the plaintiff in the sum of $2,400; and the defendant alleged exceptions.

The case was argued at the bar in January, 1907, before *Knowlton*, C. J., *Morton, Loring, Braley,* & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*W. H. Hitchcock,* (*G. A. Drury* with him,) for the defendant.

*J. H. Vahey,* (*P. Mansfield* with him,) for the plaintiff.

BRALEY, J. By its contract the defendant impliedly undertook to provide the plaintiff with suitable appliances, to furnish a safe place in which he could perform his work according to the nature of the service, and to use reasonable diligence in employing competent fellow servants for the performance of their respective duties. *Snow* v. *Housatonic Railroad,* 8 Allen, 441. *Wabash Railway* v. *McDaniels,* 107 U. S. 454. If a servant, who originally was competent during his service becomes incompetent, and such incompetency either is known, or in the exercise of reasonable diligence should have been discovered, then, where the employment is continued, the master's liability remains the same, as if he knowingly, or negligently, had hired him in the beginning. *Gilman* v. *Eastern Railroad,* 13 Allen, 433, 441. Upon the trial of such an issue single instances of inefficiency are inadmissible, but the servant's general reputation as a person deficient in skill in the performance of the service for which he was engaged is admissible. *Hatt* v. *Nay,* 144 Mass. 186. *Connors* v. *Morton,* 160 Mass. 333. *Palmer* v. *Coyle,* 187 Mass. 136, 139.

While the previous experience of Mead, who the plaintiff alleges to have been an unfit servant, is not disclosed, there was evidence that, having been employed by the defendant, after receiving instructions from the assistant superintendent, he began

as a motorman to operate cars independently. It presently was rumored among the employees that he was incompetent, and the defendant's assistant superintendent, whose particular duty required him to supervise the proper operation of the cars, testified that from observation he had become satisfied that Mead " would never be able to run a car properly." The result of this observation having been reported by him to the superintendent, both of these agents of the defendant knew that by his conduct Mead had shown unfitness for the duties of his position, and their knowledge must be imputed to the defendant. *O'Connor* v. *Adams,* 120 Mass. 427. *Palmer* v. *Coyle, ubi supra.*

But, while there was evidence of previous inefficiency, of which the defendant could have been found to have had knowledge, as well as the retention of an unfit servant, the plaintiff cannot recover unless it also appeared that the accident was occasioned by this incapacity. See *Albro* v. *Agawam Canal Co.* 6 Cush. 75 ; *Curran* v. *Merchants' Manuf. Co.* 130 Mass. 374, 375. Upon this question the uncontroverted testimony makes it evident that, in the blasting of rock caused by the construction of a sewer in the vicinity, boulders had been thrown upon the track of the defendant's railway. Because of this obstruction the assistant superintendent directed Mead and the plaintiff, who respectively were acting as motorman and conductor, to change from the car they were running, and complete the transit by taking another car then waiting on the farther side. The change accordingly was made, and, having proceeded to the end of the route, their positions were reversed, and the car started on the return trip. When it approached the place where under the arrangement it should have stopped, the car continued on its course and ran directly into the boulder, causing the plaintiff's injuries. If of average intelligence, it must be presumed that the motorman, being aware that they were to change cars as before, knew that if the car kept on there must be a collision, and that, in its proper management to prevent this, the motive power would have to be disconnected, and the brake applied at a certain distance from the point where the car should have been stopped. The motorman's failure to accomplish this object, with a straight track, which did not appear to

have been otherwise than in good condition and with a car the mechanical and electrical equipment of which was not shown to have been defective, when considered in connection with his reputation, was evidence that the accident was due to a lack of ordinary skill.

Having introduced testimony from which on a single ground the defendant's negligence could be found, the plaintiff was under no obligation to go further, and, if either the track or the car was defective, thereby causing the collision as the defendant suggests, it offered in evidence no proof that such conditions existed. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196. *Droney* v. *Doherty*, 186 Mass. 205, 208. It further is argued, that the plaintiff having heard of the disqualification of Mead, must be held to have assumed any risk of injury which might follow therefrom, while they were engaged in the prosecution of their common employment. After the plaintiff had been employed, the motorman was hired, and there being no assumption of risk by contract, if assumed at all it must have been by conduct. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135, 136. On the morning of the accident, after having ascertained that Mead was to accompany him, the plaintiff asked for another motorman, and, this request being refused by the "starter" in charge of the dispatching of cars, he then requested that some one else should go as conductor. This request also having been denied, the plaintiff then took his place on the car. But while the jury could find that he knew of the rumored incompetency of Mead, such knowledge alone would be insufficient, for they also could find that he had not been informed of the extent of his incapacity, and hence did not fully appreciate a danger whose existence was caused solely by the defendant's fault. An apprehension by the plaintiff that the motorman might be careless in the ordinary management of the car might be found not to include necessarily a forecast that after an explicit order to stop at a certain point to avoid an obstruction plainly visible on the track, he would be incapable of obedience, and heedlessly cause a collision. Under such circumstances it cannot be held as matter of law that a servant voluntarily takes the risk of the subsequent accident, as the conduct of the servant also must be found to have been accompanied by a voluntary purpose to expose

himself to a danger which he appreciates. It, therefore, became a question of fact for the jury to determine u.ader proper instructions, whether the plaintiff voluntarily placed himself in this position. *Mahoney* v. *Dore*, 155 Mass. 513, 519. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437, 440, 441, and cases cited. *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257, 263. *Williams* v. *Birmingham Battery & Metal Co.* [1899] 2 Q. B. 338, 344, 345.

The defendant's first and second requests for rulings were properly denied, while the third was given although not in the language requested. The defendant's exceptions to the instructions on the assumption of risk having been waived, the remaining exception relates to those given concerning the negligence of the motorman. The defendant construes this portion of the charge as stating that the plaintiff was to be considered a passenger in whose transportation the defendant as a common carrier must exercise the highest degree of diligence commensurate with its undertaking. But as a whole it is not susceptible of this meaning. The jury first were told that Mead was required to exercise the degree of care called for under all the circumstances of the case. The presiding judge then continued, "if there had been only one passenger, this plaintiff, . . . the duty imposed . . . would have been ordinary care, reasonable care with reference to all the circumstances of the case; but with reference to passengers, he was called upon to exercise the highest degree of care consistent with the performance of his duties; did he exercise reasonable care?" In referring to the plaintiff as if he had been the sole passenger, there was no modification of his first instruction, and having alluded to his further duty, the judge closed with a restatement of the rule previously given, that the burden was upon the plaintiff to satisfy them that at the time of the accident the motorman failed to exercise such reasonable care as the conditions demanded. Although the defendant would not be liable to the plaintiff for Mead's negligence if caused solely by want of ordinary care, it was responsible when caused by unskilfulness, and his conduct at the time of the accident was material, for if due care was found the plaintiff could not recover. The entire charge is not reported, and if the defendant was apprehensive, as it now contends, that under the

portion of the charge already considered the jury might have deemed the question one of Mead's due care, rather than of his incompetency, it should have asked for more specific instructions. *Wright* v. *Wright,* 139 Mass. 177.

*Exceptions overruled.*