HORACE V. YOUNG *vs.* GEORGE H. SNELL.

Bristol. October 27, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

In an action by a carpenter, employed by the defendant to build an addition to his planing mill, for having parts of two fingers cut off by a buzz planer, which he had been invited to use, and against which he fell when he had stumbled by reason of his foot catching on something on the floor which was covered with shavings, the plaintiff's evidence showed that a week after the accident he went with another carpenter to the place where it occurred and found an old bent nail sticking up in the floor at the distance of about eighteen inches from the bottom of the planer " where it came directly in the way of his right foot," that it protruded above the floor from an inch to an inch and three quarters, that it was in a depression worn in the floor, that the depression looked old, that the nail looked old and was bent over and was worn and shiny, as if it had been trampled on, and there was evidence that the shavings on the floor had not been cleaned up between the time of the accident and the time that the plaintiff found the nail. *Held*, that the evidence warranted the jury in finding that the nail found by the plaintiff a week after the accident was there before the accident and was the cause of it, and that on proper inspection it would have been found by the defendant.

A carpenter who in doing work which he has been employed to do has been invited to use a buzz planer, the floor surrounding which continuously is covered by shavings, and who is injured by falling against the buzz planer by reason of stumbling on an old nail protruding from the floor and hidden by the shavings, is not as matter of law negligent because he has walked to the buzz planer over the floor covered by shavings without sweeping them away and examining the condition of the floor, nor is the risk of injury from the nail, thus continuously covered, assumed by him, it not being an obvious one.

TORT for personal injuries incurred by a carpenter on May 14, 1906, while employed by the defendant to build an addition to his planing mill at Attleborough, in the manner stated in the opinion. Writ dated November 28, 1906.

In the Superior Court the case was tried before *Raymond*, J.,

who at the close of all the evidence ordered a verdict for the defendant, and, with the consent of the parties, reported the case for determination by this court of the questions of law raised by his ruling. If his ruling was correct, judgment was to be entered for the defendant; if not, judgment was to be entered for the plaintiff, by agreement of the parties, in the sum of $1,000.

*F. S. Hall*, for the plaintiff.

*D. F. Slade*, for the defendant.

LORING, J. The plaintiff was hired by the defendant to put up an addition to his planing mill about six weeks before the accident here complained of. He testified that he was invited by the defendant to use the machinery in the mill whenever he had work to be done which could be done more quickly on one of the machines. On the day in question he had occasion to square up a piece of quarter round board and undertook to use the defendant's buzz planer in doing that work. His story was that he found that he did not have the right gauge on; that he went and set the gauge; that he then "went to pick up" the board in question, when something caught his foot and "caused him to stumble" on to the buzz planer which was exposed, and parts of two of his fingers were cut off by the machine. He was alone in the room at the time, and he testified that "it was not light around the machine and you could not see the floor around the machine; that there were a good many shavings on the floor; that these were directly under his feet and all around the planer." The accident was on a Monday.

He further testified that a week later he went to the place with another carpenter who had never worked for the defendant, and found a nail sticking up "about one inch or more" above the floor, and about eighteen inches from the bottom of the planer; "that it was where it came directly in the way of his right foot." He described the nail as "hooked over, the head of it" and "that the head of it was towards him as he stood there working on the machine"; that he saw an "impression in the floor" which indicated that the nail had been in the board; "that the depression looked old" and "the nail looked old"; it had been worn slightly; the nail was not there in the depression but was sticking up from it; the depression was

about the same length as the part of the nail which stuck up from the floor, and the nail seemed to fit it. When he went there a week after the accident and found the nail "he took a stick and brushed the shavings away and found the nail." The depression showed where the head of the nail had been driven into the wood.

The story of finding the nail was corroborated by the testimony of the carpenter who was with the plaintiff when he went to the factory a week after the accident as has just been stated. He (the carpenter) testified to the shavings, to brushing them aside and finding the nail. He saw that the nail was "sticking up an inch to an inch and three quarters." He also corroborated the plaintiff's story as to the place where the nail was found, adding "it was a sort of a bad place for it"; and as to the nail being bent over, he testified that it "looked as if it was stamped on"; that it "looked to him as if the nail had been tramped on some around there"; that the nail head was bent over; that "the nail was loose in the floor, in the hole in the floor, from being tramped on; that there was a depression under the head of the nail"; "that the nail did not look very new."

The plaintiff's story as to what the nail looked like was further corroborated by one Fitch, who was an employee of the defendant. His testimony confirmed the story told by the plaintiff as to where the nail was, as to its sticking up from the floor, as to its being bent over, and as to the depression in the floor. He also testified "that it appeared to be a nail that had worked itself out of the floor or had been driven in the floor and tipped over by working around by the tramping on it; that it looked like a nail after it was scraped some on the side by the feet of any one there and loosened out of the wood which kind of bent over the head of it; that it looked as if it had been tramped down in the floor as a nail naturally would be that had been tramped on the floor"; and "that the floor was all worn there; that it was worn up under the edge of the planer."

One of the defendant's employees called by the defendant testified that his attention was called to the nail by the plaintiff. He said that the nail was two and a half inches long, and "that about half an inch or three quarters of an inch" of it only "was

in the floor." His testimony corroborated that of the plaintiff as to where the nail was, as to the nail being bent over, as to its being " worn some " and " shiny "; " that it showed shiny in a part of it where it had been struck by the feet," and " that it was not a new nail." He also testified that between the time of the accident and the time the plaintiff found the nail he did not do any cleaning " as far as he could remember."

There was evidence that the floor about the buzz planer was habitually covered with shavings, and that these shavings were usually cleaned up once a week, on Saturday night ; and that it was the duty of the last witness to clean up the shavings at that time.

There was some evidence which tended to contradict what might be inferred from the testimony of the plaintiff and his witnesses. It is not necessary to state what it was, for even if not contradicted the jury could disbelieve it *in toto*. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314.

The case does not come within *Jennings* v. *Tompkins*, 180 Mass. 302. The nail in the case at bar (if the plaintiff's story was believed) was bent over so as to make a person stumble, and was in such a position with reference to the buzz planer as to make its existence a source of great danger. In addition the jury were warranted in finding that it stood up above the floor from an inch to an inch and three quarters, in place of three sixteenths of an inch, as in *Jennings* v. *Tompkins*.

It is not an infrequent occurrence that the condition in which the locus is found after an accident is of itself alone sufficient evidence of its having been in the same condition before the accident. In *Comerford* v. *Boston*, 187 Mass. 564, the plaintiff was injured by the sidewalk having settled down about two inches below the curbing. There was evidence that, after the accident the facing of the inside of the curbing was " pretty nigh black." This was held sufficient evidence that the sidewalk had been in this condition such a length of time before the accident that the city, by the exercise of reasonable diligence, might have known of it in season to have it remedied within Pub. Sts. c. 52, § 18 (now R. L. c. 51, § 18).

In *Gould* v. *Boston Elevated Railway*, 191 Mass. 396, a seat in an open car fell on the plaintiff by the breaking of the metal-

lic armature. Evidence that after the accident half of the break of the armature was rusty, black and corroded, was held to be evidence that the crack was an old one, and would have been seen on inspection if due care had been used by the defendant.

*Hannan* v. *American Steel & Wire Co.* 193 Mass. 127, is another case of the same kind. There an injury was caused by the breaking of an iron bolt, and after the accident it was found that part of the break was fresh and the other part rusty. It was held that the condition in which the bolt was found to be after the accident warranted a finding that there was an old flaw which could have been found had proper inspection been made by the defendant, in the exercise of due care.

In our opinion the case at bar comes within these decisions, and the evidence here warranted the jury in finding that the nail found by the plaintiff a week after the accident was there before it and was the cause of it; and that on proper inspection it would have been found by the defendant.

Further, in our opinion this is not the case of a transitory risk, as in *Donovan* v. *American Linen Co.* 180 Mass. 127, and *McCann* v. *Kennedy*, 167 Mass. 23.

Neither was the accident caused by the neglect of a fellow servant in not sweeping up the shavings. On the uncontradicted testimony the shavings were to be swept up but once a week. There is no evidence that they were not swept up on the Saturday night preceding the Monday on which the accident occurred. The shavings around the planer at the time of the accident might well have been made on that Monday morning. The case therefore does not come within *McRea* v. *Hood Rubber Co.* 187 Mass. 326.

We are also of opinion that the jury were warranted in finding that the accident was not caused by contributory negligence on the part of the plaintiff. They were warranted in finding that the nail was hidden by shavings at the time of the accident. In our opinion a workman cannot be said as matter of law to be guilty of negligence if he walks to a buzz planer over a floor covered by shavings, without sweeping them away and examining the condition of the floor.

Since the floor was habitually covered with shavings, the risk from this nail was not an obvious one, and for that reason

was not one assumed by the plaintiff as an incident to the employment which he chose to accept.

In accordance with the terms of the report the entry must be

*Judgment for the plaintiff in the sum of $1,000.*