JOHN OAKEY vs. ROBB-MUMFORD BOILER COMPANY.

Middlesex.    March 23, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.

In an action at common law by one, who was employed by the defendant to operate a riveting machine, to recover for personal injuries alleged to have been caused by the plug of a petcock on the machine being blown out and striking the plaintiff in the eye, the plaintiff can recover if he shows that he was in the exercise of due care and that the injury was due to the facts that the petcock was not a suitable and proper one for the use to which it was put and that it was defective when it was put on, although it appears that the petcock was procured from the defendant's stock room where there were other petcocks of different shapes and sizes, if it does not appear that there was in the stock room any petcock suitable for the need which the fellow employee sought to satisfy.

At the trial of an action by one, who was employed by the defendant to operate a riveting machine, to recover for personal injuries caused by a plug of a defective or unsuitable petcock on the machine being blown out and striking the plaintiff, it appeared that the plaintiff had worked on hydraulic riveting machines for about thirty years, that the machine at which he was injured was operated by compressed air instead of by water pressure and that it had been installed by the defendant for four weeks only, which constituted the plaintiff's entire experience with such a machine, that the petcock in question was procured from the defendant's stock room and by him was put into the machine, the plaintiff having nothing to do with the installation; and the plaintiff testified that he had never repaired the machine himself, although he had helped to do so, that he "did nothing but run the machine," that he was not a machinist and never had had any experience with machinery except in using it, that the only thing he had done with the petcock was to open it and close it about six times in four weeks, that he knew nothing of how it was made or of its inner construction, that he never had had anything to do with putting on petcocks, that for some time before the accident the machine had been giving him trouble, that he had thought something was wrong with the pump and repeatedly had reported its condition, and that the machine "kicked . . . every little while." *Held*, that it could not be ruled as matter of law that the plaintiff knew and appreciated and therefore assumed the risk of working with the defective petcock; and that the question whether he was exercising due care was for the jury.

TORT with counts at common law and under R. L. c. 106, § 71, cl. 1, for personal injuries resulting to the plaintiff while he was in the defendant's employ and as described in the opin-

ion.   Writ in the Superior Court for the county of Middlesex dated July 9, 1906.

The case was tried before *Sherman*, J.   The facts are stated in the opinion.   At the close of the evidence, the presiding judge submitted the case to the jury for the assessment of damages only.   The jury assessed the damages at $5,000. Thereupon the presiding judge ordered a verdict for the defendant and by agreement of the parties reported the case for determination by this court, judgment to be entered for the defendant upon the verdict if the ruling of the trial judge was right, otherwise judgment to be entered for the plaintiff for $5,000 unless this court should be of opinion that the action could be maintained only under R. L. c. 106, § 71, cl. 1, in which case judgment was to be entered for the plaintiff for $4,000.

*G. L. Mayberry*, (*T. F. Carey* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

HAMMOND, J.   While the plaintiff in the employ of the defendant was operating a riveting machine in the usual manner, the plug of a petcock which had been placed upon the machine by the defendant blew out and struck him in the eye, causing him great bodily injury.   The case involves the usual questions of due care of the plaintiff and negligence of the defendant.   We have carefully read the evidence, and without reciting it in detail, we think it warrants findings that the petcock in question was not a suitable and proper petcock to be used on a machine liable to be subjected to pressure as high as that to which this machine, in its ordinary use, was subjected; that it was defective when put on; that at the time of the accident the defect was the cause of the blowing out of the plug; and that in attaching this petcock to the machine the defendant did not use reasonable care for the protection of the plaintiff and other employees having occasion to use the machine.   Nor does the fact that this particular petcock was selected by Pomeroy or Hewett relieve the defendant.   It does not appear that there was any different or stronger petcock furnished by the defendant which could have been selected.   For aught that appears this is precisely the kind of petcock the defendant intended should be put on.   There is no evidence of a mistake in selecting a defective tool from a pile

where there were tools not defective. The plaintiff was therefore entitled to go to the jury on the question of the negligence of the defendant.

There was also evidence of the due care of the plaintiff. It is argued, however, by the defendant, that the plaintiff was an experienced workman and that if there was any defect in the petcock it was his business to detect it and make the necessary repairs; and it must be said that there is considerable evidence in support of that view. On this point however the plaintiff testified as follows: "I had worked on the riveting machine up there about four weeks. Since it started it run bad — she hadn't been running exactly right. This petcock had been put in about a month before the accident. I had nothing to do with putting it in. Mr. Pomeroy put it in. The use of air instead of hydraulic was a new thing, and sometimes it wouldn't drive the rivets as it ought to, and I had to take them out. They had just commenced to use air instead of hydraulic on this machine about four weeks before. I had not worked on the air machine before this accident. I don't know what was the matter with this machine; it wouldn't drive the rivets as it ought to. There had been repairing done on this machine during those four weeks by Mr. Pomeroy. I had helped around. I had never repaired that machine myself. I had helped Mr. Pomeroy to repair it. My work was that I was supposed to drive rivets. I did nothing but run the machine. I am not a machinist. I never had any experience with machinery except in using it. I was used to hydraulics. I had nothing to do with the machine except to operate it, run it, use it. I had nothing to do with the petcock. I never did anything to it, only to open it and let the water out once or twice. I never examined it. I do not know how they were made. I did not know what the internal construction of these petcocks was — how they were fastened together."

On cross-examination he testified as follows: "I had worked on riveting machines for about thirty or thirty-one years. My work had been driving rivets. I drove them first with hydraulic pressure and last with air. During all these years there had been petcocks in these machines. I had to open them to let the air out. I never opened that one more than twice. There was

no air on the other ones. Those where there was water pressure I opened every night when it was cold weather. . . . I have seen petcocks for twenty-eight years, but not that kind, nor on that machine. I have unscrewed them in cold weather for twenty-eight years. I knew what petcocks were. I knew a part about them. I knew their purpose was to let the water out. I had run machines for twenty-eight years. I had one man and a couple of boys under me. I had helped Pomeroy repair machines in this factory. I was helping him set this machine up in South Framingham. I helped other machinists on the riveting machine at Cambridge. I couldn't say how often — whenever there was a riveting machine out of order. I never had anything to do with putting on petcocks. I saw them put on. I was about the machine when petcocks were being put on. Sometimes they were put on when I was away. I had seen them put on perhaps half a dozen times. I had been in the stock room and had seen petcocks there. The petcock used as an exhibit was something similar to the one that was on the machine. I couldn't say whether the screws were the same thread. It looks the same — quarter inch. The petcock put on in South Framingham differed from the one on the machine in Cambridge only in the stem — and the thumbscrew was there. There was a thumbscrew on the side instead of this little handle. It had the same parts. I don't think there was a washer on those in Cambridge. I don't know whether there was a washer on the machine in South Framingham. The petcock was screwed into the pipe. The machine had been giving us trouble for some days before the accident. I thought there was something wrong with the pump — I reported it. It wasn't working right on the day of the accident. I reported that. It was still working badly at the time. It commenced to work better and then it commenced to kick again, every little while. I unscrewed the petcock to let the air out. I had probably done it half a dozen times in the four weeks. There were working under me at the time a couple of boys and a 'steadier' — a man to steady the machine. The room where the machine was was part of the shop and there were men all around there, but only four of us on the platform. It was the same machine I had worked on in Cambridge but not

the same force; air instead of hydraulic; that was the only difference." ·

While it thus appears that the plaintiff had used petcocks many years, yet the plaintiff had been working where there was not the same force used as at the time of the accident. Compressed air was used and had been for several weeks; and the evidence would warrant a finding that while the plaintiff knew how to use a petcock he had no knowledge of the strength required to meet successfully the pressure exerted on this machine. Although the machine had been working badly he testified that he thought there was "something wrong with the pump." And for aught that appears in the evidence that may have been the primary cause of the bad action of the machine. This action he testified he reported. While the case is close it could not be ruled as matter of law that the plaintiff knew and appreciated, and therefore assumed, the risk of working with this defective petcock, or that it was his duty to see that it was. safe.

The evidence would support a finding upon the common law count. *Hannan* v. *American Steel & Wire Co.* 193 Mass. 127. *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119. *Moynihan* v. *Hills Co.* 146 Mass. 586. *Gregory* v. *American Thread Co.* 187 Mass. 239, and cases cited.

In accordance with the terms of the report there is to be entered

*Judgment for the plaintiff for $5,000.*