HELEN A. COBB & another *vs.* WORCESTER COUNTY ELECTRIC COMPANY.

Worcester.   September 22, 1958. — December 22, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Evidence,* Of continuing condition, Distortion of evidence. *Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

At the trial of an action for personal injuries sustained by the plaintiff one Saturday in the defendant's store when, as she testified, she tripped and fell on the floor cover of an electric outlet which she observed after the accident was raised an inch or more on one side, the jury were entitled to believe testimony of employees of the defendant that there was no change in the position of the cover from the time of the accident until after the following Monday, on which day, the plaintiff's husband testified, he saw the cover raised on one side, and to disbelieve testimony of the same employees of the defendant that the cover was flush with the floor after the accident, and it was error prejudicial to the plaintiff to strike out the husband's testimony on the ground that there was "no evidence" that the position of the cover was the same on Monday as it had been at the time of the accident.

TORT.   Writ in the Superior Court dated August 28, 1952.

The action was tried before *Meagher,* J., and verdicts were returned for the defendant.

The case was argued in September, 1958, before *Wilkins,* C.J., *Williams, Counihan, Whittemore,* & *Cutter,* JJ., and afterwards was submitted on briefs to all the Justices.

*Charles W. Proctor,* for the plaintiffs.

*Philip L. Berkeley,* for the defendant.

WHITTEMORE, J.   The plaintiffs' exceptions in this action of tort for personal injuries to the female plaintiff (hereinafter, the plaintiff) attack the action of the trial judge in striking testimony of the condition, on the Monday morning following the injury, of the store and office premises of the defendant in Worcester where the plaintiff fell on the preceding Saturday morning, July 26, 1952, and in instructing the jury to disregard the testimony because "there was no evidence concerning the fact that the premises were in the same condition as they were at the time of the accident."

The plaintiff testified that she tripped on a "plug" which the evidence shows was a small, disc-like cover of an electric outlet, installed at floor level in that part of the floor which was used by customers, and that after her fall she saw the plug raised an inch or an inch and a half on one side.   The husband's testimony was that the disc was in a similar position on Monday and looked as though the screw threads on its perimeter were crossed with those of the receiving orifice, but he did not know whether it was loose as he did not touch it.   There was evidence that floor outlets were used when displays were set up or in arranging demonstrations.   The defendant's witnesses testified in effect that the fall did not occur near the outlet, so that although the floor was examined after the fall, the examination about the outlet was no more then cursory.

The plaintiffs relied, and rely here, on the testimony of two employees of the defendant, whose desks were so placed that they could see the outlet.   These two employees testified that the disc was flush with the floor after the accident. On cross-examination one of these witnesses testified that she did not know the last time the cap had been unscrewed; it was safe to say it had not been changed in a month's time prior to the accident.   "There had been no change made

in the cap between the time of the accident and Tuesday of the morning of the following week so that as far as she knew . . . . [in that period] the cap and its outlet remained in exactly the same condition and position . . . ." The other witness testified that "[s]he had seen nothing done to it for a month before the accident happened and there were no changes in it following the accident, at least until the following Tuesday and it was in the same position on Tuesday as it was on the day of the accident and for a month previous to that."

This testimony, in the view of a majority of the court, was more than an assertion that the disc whenever observed from Saturday through Monday was always flush. There was implicit in it, if not express, the assertion that the witnesses had in this period seen no one move it. This assertion was separable and available without distortion of the whole. The jury could, reasonably, believe it and also believe that the witnesses were mistaken in saying that the disc was always flush when seen. *Marquandt* v. *Boston Young Women's Christian Assn.* 282 Mass. 28, 31. *Cosman* v. *Donovan,* 282 Mass. 224, 228. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 519. *Sturman* v. *Davis,* 321 Mass. 442. *Lowell* v. *Boston Storage Warehouse Co.* 280 Mass. 234, 237. This was some, though slight, evidence that the premises were in the same condition on Monday as on Saturday.

In addition to the evidence discussed, there was relevance in the testimony of the husband itself. This testimony permitted the jury to draw the conclusion that the disc was in a wedged position of some firmness. Such a conclusion would tend to suggest that the position observed could have continued from one business day to the next notwithstanding the busy location. See *Droney* v. *Doherty,* 186 Mass. 205, 207; *White Sewing Mach. Co.* v. *Phenix Nerve Beverage Co.* 188 Mass. 407; *Young* v. *Snell,* 200 Mass. 242. In this connection the plaintiff's testimony that the disc was in that position on Saturday could not be disregarded.

The testimony, while not offered for the purpose, was

relevant for the limited purpose of rebutting the testimony for the defendant indicating that it was not physically possible for the disc to be and remain in the position asserted. As the plaintiffs did not offer the testimony for this purpose, we would not regard the point alone, but believe it is to be noticed in determining our disposition of the exceptions.

As there was evidence of no change of position, it was error to strike the husband's testimony. It is error to disregard clearly relevant testimony in making a ruling as to the admission of other evidence, just as it is to exclude clearly relevant testimony. *Martin* v. *Richards,* 155 Mass. 381, 383–384. See *Brooks* v. *Petersham,* 16 Gray, 181, 183; *Droney* v. *Doherty,* 186 Mass. 205, 207. The discretion of the trial judge in these matters (see *Ferron* v. *King,* 210 Mass. 75, 77; *Milano* v. *Wasserman,* 255 Mass. 1, 4) gives a latitude similar to that which is available in determining whether any testimony offered is sufficiently relevant to be received. It does not operate to transfer to the judge a part of the jury's function.

The stricken testimony was not merely cumulative. We cannot rule that "the error complained of has not injuriously affected the substantial rights of the parties." See G. L. c. 231, § 132. Particularly here, where the plaintiffs were insisting that a condition existed which it would be easy to believe was at best very unlikely in view of the testimony as to the shape and physical properties of the relevant objects, it was important to the plaintiffs to be able to reinforce the injured plaintiff's testimony with the observation of another person. Compare *Ross* v. *Nourse,* 330 Mass. 666, 672.

We cannot say that the plaintiffs could not have had recovery on the evidence. A position of the disc out of place after the accident would be some evidence that it was not properly in place and flush with the floor prior to the accident. It could be inferred that such a condition resulted from act or omission of employees of the defendant.

*Exceptions sustained.*